```
 1                  UNITED STATES DISTRICT COURT

 2                    DISTRICT OF MASSACHUSETTS

 3    _____

 4    ASTELLAS INSTITUTE FOR
      REGENERATIVE MEDICINE, ET AL.,
 5
                       Plaintiffs,        Civil Action
 6                                        No. 17-cv-12239-ADB
      v.
 7                                        July 23, 2019
      IMSTEM BIOTECHNOLOGY, INC. ET AL.,
 8
                       Defendants.        Pages 1 to 19
 9    _____

10

11
              TRANSCRIPT OF SCHEDULING CONFERENCE
12         BEFORE THE HONORABLE ALLISON D. BURROUGHS
                 UNITED STATES DISTRICT COURT
13              JOHN J. MOAKLEY U.S. COURTHOUSE
                      ONE COURTHOUSE WAY
14                    BOSTON, MA   02210

15

16

17

18

19

20

21

22
                       JOAN M. DALY, RMR, CRR
23                     Official Court Reporter
                    John J. Moakley U.S. Courthouse
24                 One Courthouse Way, Room 5507
                         Boston, MA   02210
25                    joanmdaly62@gmail.com
```

```
 1    APPEARANCES:

 2
      FOR THE PLAINTIFFS:
 3
              DAVID P. FRAZIER, Ph.D.
 4            REBECCA L. RABENSTEIN
              Latham & Watkins LLP
 5            555 Eleventh Street, N.W.
              Suite 1000
 6            Washington, DC 20004
              202.637.2200
 7            david.frazier@lw.com
              rebecca.rabenstein@lw.com
 8
              TROY K. LIBERMAN
 9            Nixon Peabody LLP
              Exchange Place
10            53 State Street
              Boston, Massachusetts 02109
11            617.345.1281
              tlieberman@nixonpeabody.com
12
13    FOR THE DEFENDANTS:

14            BENJAMIN M. STERN
              TIMOTHY R. SHANNON
15            Verrill Dana LLP
              One Boston Place
16            Suite 1600
              Boston, Massachusetts 02108
17            617.309.2600
              bstern@verrilldana.com
18            tshannon@verrilldana.com

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2               (The following proceedings were held in open
 3    court before the Honorable Allison D. Burroughs, United
 4    States District Judge, United States District Court, District
 5    of Massachusetts, at the John J. Moakley United States
 6    Courthouse, One Courthouse Way, Boston, Massachusetts, on
 7    July 23, 2019.)
 8               THE CLERK:  This is civil action 17-12239, Astellas
 9    versus ImStem Biotechnology.  Will counsel identify
10    yourselves for the record.
11               MR. FRAZIER:  David Frazier, Your Honor, for
12    Astellas and Stem Cell & Regenerative.  I'm joined today by
13    Reba Rabenstein also of Latham & Watkins.
14               MR. STERN:  Good morning, Your Honor.  Ben Stern on
15    behalf of the defendant.  My co-counsel Tim Shannon was held
16    up in traffic.  He should be here shortly.
17               THE COURT:  Do you want me to wait for him?
18               MR. STERN:  That would be preferable, but if Your
19    Honor has a busy docket, we can proceed.
20               THE COURT:  I don't mind waiting.  I have a plea
21    scheduled at 10:30, but she thought she was going to be late.
22    Right, Karen?
23               THE CLERK:  Yes.
24               THE COURT:  I can wait a few minutes.
25               MR. STERN:  May I just make a phone call?
```

1           THE COURT:  Sure.
2           (Pause)
3           MR. SHANNON:  Good morning, Your Honor.
4           THE COURT:  Good morning.
5           MR. SHANNON:  I apologize for the tardiness.  I had
6   this as 10:30 on my calendar.  Completely my mistake.
7           THE COURT:  Believe me, the slight tardiness is the
8   least of today's transgressions.
9           MR. SHANNON:  Good.
10          THE COURT:  Discovery is over in this case.  It
11  ended two days ago, right?  Or the 19th?
12          MR. SHANNON:  After a fashion, Your Honor.
13          THE COURT:  I prepared this case yesterday
14  afternoon, and I came in this morning and there was a whole
15  other slew of papers waiting for me.  So I do it all over
16  again.
17          This is my proposal on this:  They filed a
18  motion -- let's start with the motion to amend.  They filed
19  an extremely tardy motion to amend.  You're going to oppose
20  it?
21          MR. FRAZIER:  We are, Your Honor.
22          THE COURT:  Okay.  Why?
23          MR. FRAZIER:  In part because it's extremely tardy.
24          THE COURT:  How about this:  I deny the motion.
25  They file a new case.  They mark it as related, and I

```
 1    consolidate them for trial.
 2            MR. FRAZIER:  Your Honor, I think there would still
 3    be additional discovery that would be required because this
 4    is all so late.  And I think we should go forward with the
 5    trial.  I think a single trial on the first action would
 6    resolve the issues in both cases due to res judicata.
 7            THE COURT:  If that's how you want to do it, then
 8    discovery is over, and I'll just start scheduling right now.
 9    We would have no more discovery, which I think you both need.
10    The case is almost two years old.  There's been plenty of
11    delay on both sides.  No one is covering themselves with
12    glory on moving this along here.
13            They are extremely tardy for absolutely no good
14    reason, and I at least applaud Mr. Shannon's candor and his
15    motion which I thought was as well done as he was going to be
16    able do it under the circumstances.  I feel like you've been
17    playing with your food for two years, and now -- the
18    complaint probably should be amended.
19            MR. FRAZIER:  Your Honor, we would be fine with
20    ending discovery today.
21            THE COURT:  Then we're going to have a whole new
22    lawsuit.
23            MR. SHANNON:  Your Honor, may I react?  It is
24    tardy.
25            THE COURT:  No kidding.
```

```
 1              MR. SHANNON:  It has been a difficult case for my
 2  client, eight scientists and lab techs with no inhouse
 3  counsel, no experience with managing lawyers, let alone using
 4  them in litigation, in a patent inventorship dispute which is
 5  a murky area to begin with.  So I want to fall on my sword to
 6  the greatest extent possible.  Yes, it is --
 7              THE COURT:  You've had two years to educate them
 8  and to push this along.
 9              MR. SHANNON:  To the extent the shortcoming is
10  mine, I'd ask the Court direct its ire towards me.  I can
11  assure you without waiving any attorney-client privilege, I
12  have been working very hard to overcome linguistic, cultural
13  and temporal differences.
14              THE COURT:  Mr. Shannon, why didn't you at least
15  file the motion to extend discovery before the discovery
16  deadline elapsed?
17              MR. SHANNON:  As I represent discovery is really
18  not over.
19              THE COURT:  Didn't it end on July 19?
20              MR. SHANNON:  By the Court's order, yes.
21              THE COURT:  Well --
22              MR. SHANNON:  But by the parties' agreement it has
23  not.  There are three outstanding depositions.
24              THE COURT:  You don't get to agree amongst
25  yourselves to ignore my scheduling order.
```

1         MR. SHANNON:  Of course not, Your Honor.  I would
2    have been perfectly happy and asked for these depositions a
3    long time ago.  It's the plaintiffs, Astellas, who have
4    withheld these witnesses for some time.  The 30(b)(6)
5    deposition on all the state law claims, five of the seven
6    counts in this case are state law claims.  This should be
7    just an inventorship fight, frankly, to the bench.  But they
8    have bulked it up with five state law claims and withheld the
9    witness who is going to respond to all of them.
10        That has been on the books for months, and we just
11   haven't gotten that witness.  Similarly, Dr. Lu, who was at
12   the first meeting where the conception took place, has been
13   under the control of Astellas's lawyers.  We've been looking
14   for his deposition for some time.
15        So while we wish we were here earlier, I think the
16   Court is right that neither side has covered itself in glory,
17   and we've been working very hard to get through discovery as
18   quickly as possible.  Astellas released documents on Friday.
19   It's all fun and good for them to say they'd be happy to
20   close discovery today.  That means cutting off my two very
21   important witnesses for my side of the case, and they're
22   still producing documents.
23        I'm mindful of not throwing stones, glass houses,
24   etc.  I'm intellectually honest enough to acknowledge that.
25   But we have been trying to move this case along, and we are

1    proposing today critically to move this case along, our
2    schedule is faster than theirs.  We think this thing can get
3    to trial --
4               THE COURT:  And my schedule is faster than both of
5    yours.  If I allow this motion, which seems to be the most
6    efficient thing to do despite how annoyed I am about how not
7    only it's so late, but that discovery is over, and that I
8    didn't even get it so I could read it before I went home last
9    night.  What are you thinking the extra discovery is?
10              MR. FRAZIER:  I was completely blindsided by this
11   motion.  We just found out about it.  It really is
12   inappropriate at the end of a discovery in an inventorship
13   dispute, this is a classic tactic that now that they've had a
14   chance to rifle through all of our things, they suddenly come
15   up with this -- part of the defense would be that it's late,
16   part of it would be that it's futile.
17              For them to just pop up with new things, these are
18   the purported inventors of this technology.  They've known
19   for years about this.  They cited this patent that they now
20   purport to have been an inventor on in their original
21   complaint.  They're fully aware of all of this.  And now two
22   years in they suddenly realize, they suddenly declare
23   themselves to be inventors of some of the subject matter.
24              It's just not appropriate.  I'd really ask that we
25   have a chance to brief the issues fully of why this motion

1  should be denied.
2           THE COURT:  All right.  I will give you a chance to
3  brief it fully.  That being said, I'm going to set a
4  schedule.  And whether it's denied or it's not denied, this
5  is going to be the schedule.  I'm happy to hear you on it
6  today, but I'll tell you what I'm thinking.
7           So the plaintiffs don't want -- I've looked through
8  this.  I know you filed it with my Clerk yesterday.  She left
9  early yesterday, but I didn't get it until this morning.  Not
10 only did I not get it until this morning, but these are not
11 like the easiest formats to work with.  I can tell you what
12 I'm thinking, and you can tell me where I have it wrong.
13          First of all, I don't know how I can preclude them
14 a summary judgment period.  The rules allow it, and they're
15 entitled to it.  So we're not going to do that.  They have
16 proposed summary judgment briefing basically August to
17 September.  The rules control the time periods on summary
18 judgment briefing.  Right?  You propose something different
19 than what the rules allow, right?
20          MR. SHANNON:  Your Honor, the rules, of course, are
21 subject to the Court's overriding.  But, yes, we had proposed
22 an accelerated schedule in the interest of keeping this case
23 moving.
24          THE COURT:  Too late.  I'm not going to jam
25 everybody up on three weeks for summary judgment briefing

```
 1   now.
 2              MR. FRAZIER:  Your Honor, on summary judgment, if
 3   we go back to a year ago there was a status conference in
 4   this case.  And at that time Mr. Shannon had raised that he
 5   was looking for the fastest and most efficient way to get to
 6   trial.  Your Honor had suggested that skipping summary
 7   judgment would, in fact, be a way to do that.  We said we
 8   would be on board with that, let's just get to trial and
 9   we'll forgo summary judgment.  They've now changed their mind
10   and they want summary judgment.
11              The problem that I have is three-fold, really.
12   First of all, it needs to be bilateral summary judgment, not
13   just a chance for them to file their motions.  We'd need a
14   chance for us to file motions.  That has to be after expert
15   discovery because the experts need to comment on the
16   technology.  And then we would file summary judgment to take
17   out their counterclaim to them claiming to be co-inventors.
18              Second of all, the motion that they've identified
19   on statute of limitations, there's no affirmative defense of
20   statute of limitations pled in this case.  So again we have a
21   new problem.  Mr. Shannon is suggesting a period for
22   pleading for summary judgment on the issue of statute of
23   limitation.  He didn't plead statute of limitations.  It's
24   not in the case.
25              So having a separate section or a separate
```

1  opportunity to file a whole motion on that is -- it's not
2  part of his amended pleading either.  I'll tell you, if you
3  look through it, what you'll see is a lot of argument on his
4  counterclaim.  And then if you actually look carefully at the
5  proposed complaint that he -- the amended complaint that he
6  has or amended answer, he adds an affirmative defense.
7          It's not mentioned anywhere in the motion.  There's
8  no basis for good cause to add that affirmative defense of
9  statute of limitations.  So it's not been pled, and it's not
10 appropriate to have a summary judgment period for it.
11         THE COURT:  Is that the only issue on summary
12 judgment?
13         MR. SHANNON:  Your Honor, yes.  And to be clear it
14 is in the amended complaint and counterclaims.  And the
15 reason for that, Your Honor, is that we didn't receive our
16 first document, some of which now show that the plaintiffs
17 were aware of my client's patents within days of it
18 publishing.  That was unknowable to us.  We did not know
19 that.  We could not have in good faith pled it when we first
20 answered.  Now we can.
21         MR. FRAZIER:  Your Honor, they obviously knew when
22 their patent published.
23         THE COURT:  Hold on a minute.  I read the motions
24 this morning or the motion this morning and the brief.  And I
25 did not look at the actual amended complaint because -- and

1   that makes your motion to me disingenuous because there's no
2   mention of it that you were adding an affirmative defense.
3   You said you were adding an inventorship claim.
4           MR. SHANNON:  You're right, Your Honor.  The motion
5   to amend focuses on the inventorship claims of the '321.  I
6   did not think that adding the additional affirmative defense
7   warranted mention.  It does.
8           THE COURT:  It's sneaky.
9           MR. SHANNON:  Your Honor, to the extent that was an
10  oversight, I apologize.  That was not the intent at all.
11          MR. FRAZIER:  Your Honor, I read the introduction,
12  and there's no mention of an affirmative defense being added.
13  It summarizes what's being added and it's not in there.
14          THE COURT:  I agree.  He's agreeing, too.
15          MR. SHANNON:  I agree as well.  If that was a
16  mistake, I apologize.
17          THE COURT:  All right, guys.  I'm going to let him
18  brief the motion.  You're entitled to summary judgment if you
19  want it, if the affirmative defense survives.  He's entitled
20  to have expert discovery before the summary judgment motions,
21  and we'll do that.  And then I am -- basically what I would
22  like to do is tighten this up so that we have a schedule that
23  gets us trial ready by more like April than May.  And that
24  seemed to me that it could be done by -- you guys right now
25  propose -- you're exchanging the witness and exhibit lists by

1    January.  That's even on the later schedule.  And then you've
2    given yourself an awful lot of time for the *Daubert* motions.
3    I don't know why that needs so much time.
4            And as far as I'm concerned, the experts, if we're
5    going to do the experts first, you can do the experts on the
6    state law claims and the inventorship claims at the same
7    time.  And if there is expert and summary judgment, when the
8    summary judgment is ruled on, you'll do your *Daubert* motions,
9    which are almost uniformly denied.  So I don't know how much
10   time you're going to spend on those.  And then we'll get a
11   trial date for April.
12           MR. FRAZIER:  That's acceptable to us, Your Honor.
13           MR. SHANNON:  Yes, Your Honor.
14           THE COURT:  What I am going to do is you're going
15   to brief it.  How long do you need to brief it?
16           MR. FRAZIER:  We can follow the normal schedule or
17   we can expedite it.  We could put something together in a
18   week in terms of a response.
19           THE COURT:  Can you do that, please, because then
20   we can get it ruled on.
21           MR. SHANNON:  Your Honor, if it would be helpful,
22   the ink is still wet on our motion, as you know.  I'd be
23   happy to file a corrected version clearly highlighting the
24   affirmative defense.
25           THE COURT:  Nope.  We're all aware of it.  He's

```
 1  going to answer.  We'll rule on it as quickly as we can.  And
 2  then one way or another you guys are going to propose a new
 3  schedule that gets us trial ready for April and understanding
 4  my view that the way to do that is to combine expert
 5  discovery, and then I think you can make that happen.
 6          And you leave each other the amount of time to
 7  respond to motions other than this one on the motion to amend
 8  that comports with the rules unless you can mutually agree
 9  that you're going to shorten it.  I'm not going to rush
10  anybody through summary judgment and, whatever it is,
11  whatever you've allowed, three weeks or -- you've offered, I
12  think, somewhat of an expedited summary judgment schedule as
13  well, although I haven't done the math on it.
14          If you can agree on something shorter, that's
15  great.  As I say, if you have a real *Daubert* motion, go
16  ahead.  But when I started here, I scheduled *Daubert* hearings
17  on all my cases where there was a *Daubert* motion, and I went
18  down to the judge's lunch, and I said what do you guys do
19  with these *Daubert* motions.  And there was not a judge in the
20  room that had ever held one.  Now I've gotten chintzy about
21  holding them, too.  If it's not a crazy opinion, it's coming
22  in.  Any defects in it will go to weight, not admissibility.
23          Do you want a trial date now, or do you want to --
24  how long is the trial?  What are you thinking?
25          MR. SHANNON:  Your Honor, from our perspective, it
```

1    turns very much on whether or not the state law claims are
2    still in.  If the state law claims are out, this becomes a
3    bench trial and a short one.  If the state law claims are in,
4    it's longer and messier.
5            MR. FRAZIER:  Your Honor, I think the state law
6    claims are in, and we should schedule trial with the
7    assumption that the state law claims are in the case.
8            THE COURT:  Agreed.
9            MR. FRAZIER:  I think a five-day trial would do it
10   then.
11           THE COURT:  Five days with the state law claims?
12   What I really want to know is a week or more than a week.
13   Are you going to go into the second week?
14           MR. SHANNON:  A week might be tight, Your Honor.
15           THE COURT:  Karen, do you know when April vacation
16   is?
17           THE CLERK:  I think the week of the 20th.
18           THE COURT:  It's Patriot's Day week.  I have the
19   judge's conference the week before.
20           THE CLERK:  The week of the 20th is and then the
21   13th.  So the two middle weeks.
22           THE COURT:  Two weeks before the judge's
23   conference?
24           THE CLERK:  March 30.
25           THE COURT:  The week starts March 30?

```
 1                THE CLERK:  Yes.
 2                THE COURT:  I have a judge's conference and then
 3     April vacation.  Those two weeks are out.  So either the two
 4     weeks before that or -- what's the next week?
 5                THE CLERK:  April 27 is the week after and then the
 6     4th.
 7                THE COURT:  I would prefer to do it the two earlier
 8     weeks in April.  If you can check your schedule we can get to
 9     the two later ones.
10                MR. FRAZIER:  The beginning of the period of the
11     two weeks, the earlier date, Your Honor, is?
12                THE CLERK:  March 30.
13                THE COURT:  Looks like March 30 and the week after
14     that.  Then there's judge's conference, April vacation and
15     then the 27th.
16                MR. SHANNON:  The second window starts the 27th?
17                THE COURT:  Yes.  Let me just tell you.  This past
18     year I cancelled my April vacation with my kids because I was
19     in the middle of trial.  Then I missed every single end of
20     school year event because I was still in the middle of trial
21     which is why I am not doing that.  I'm not cancelling my
22     April break.
23                I don't want to have a trial that goes too far into
24     May.  So that's what I'm thinking.  You'll file your motion.
25     We'll rule on it.  You'll submit a new schedule working
```

```
 1   backwards from one of those two trial dates.  Okay?  Anything
 2   else we can do today?
 3              MR. FRAZIER:  Nothing from Astellas, Your Honor.
 4              MR. SHANNON:  Your Honor, there is the issue of
 5   outstanding depositions.  We had begun discussions of the
 6   amount of time.
 7              THE COURT:  You can do those because you're going
 8   to put into your schedule that you want a little bit of
 9   extended discovery, and I'm going to allow that part.  It
10   looks to me like all the dates you had were between now and
11   August 1.
12              MR. SHANNON:  Yes, Your Honor.  There is one
13   outstanding issue.  I'm hesitant to bring it to the Court's
14   attention if Astellas has changed positions on this.  But of
15   the outstanding depositions, we've got Lu on Friday.  We've
16   got Wong on Monday.  There's a 30(b)(6) deposition, as I
17   said, before all the state law claims.  The parties have not
18   yet reached agreement on when that will occur unless I have a
19   new understanding.
20              MR. FRAZIER:  When it will occur?  We offered you a
21   date.  I'm sure we can schedule a date when it will occur.
22   You just need to be there.
23              MR. SHANNON:  We can do that.
24              THE COURT:  Work it into the schedule.  I'll
25   thinking August 15 or September 1.  I'm not inclined to allow
```

```
 1    a lengthy additional period of discovery.
 2              MR. FRAZIER:  Agreed.
 3              MR. SHANNON:  Absolutely, Your Honor.  I'd be happy
 4    to take it next week if possible.
 5              THE COURT:  I also don't want to screw up anybody's
 6    summer vacations having just had my April vacation -- So take
 7    whatever you need, like mid August, September.  But work
 8    backwards from the April dates.  Okay?  Thanks, everyone.
 9              MR. SHANNON:  Thank you, Your Honor.
10              (Court recessed at 10:39 a.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                  - - - - - - - - - - - -
 2                        CERTIFICATION
 3
 4          I certify that the foregoing is a correct
 5    transcript of the record of proceedings in the above-entitled
 6    matter to the best of my skill and ability.
 7
 8
 9
10    /s/ Joan M. Daly                    August 26, 2019
11
12    _____              _____
13    Joan M. Daly, RMR, CRR             Date
      Official Court Reporter
14
15
16
17
18
19
20
21
22
23
24
25
```