UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASTELLAS INSTITUTE FOR REGENERATIVE MEDICINE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> IMSTEM BIOTECHNOLOGY, INC., et al., <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> *   Civil Action No. 17-cv-12239-ADB <br> * <br> * <br> * <br> * <br> * |

**MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

Plaintiffs Astellas Institute for Regenerative Medicine ("Astellas") and Stem Cell & Regenerative Medicine International, Inc. ("SCRMI") (collectively, "Plaintiffs") filed this action against Defendants ImStem Biotechnology, Inc. ("ImStem"), Dr. Xiaofang Wang ("Dr. Wang"), and Dr. Ren-He Xu ("Dr. Xu") (collectively, "Defendants"), alleging claims for correction of inventorship of a patent under 35 U.S.C. § 256, unfair trade practices under Massachusetts General Laws Chapter 93A, conversion, unjust enrichment, misappropriation of trade secrets, negligent misrepresentation, and breach of contract. [ECF No. 113]. Defendants filed counterclaims for correction of inventorship of two different patents under 35 U.S.C. § 256 and unjust enrichment. [ECF No. 91].

Currently pending before the Court are Plaintiffs' motion for partial summary judgment, [ECF No. 127], and Defendants' cross-motion for partial summary judgment, [ECF No. 131]. For the following reasons, Plaintiffs' motion for partial summary judgment, [ECF No. 127], is GRANTED in part and DENIED in part, and Defendants' cross-motion for partial summary judgment, [ECF No. 131], is DENIED.

## I.  BACKGROUND

### A.  Procedural Background

On November 13, 2017, Plaintiffs filed suit against Defendants, seeking a correction of inventorship on Patent No. 9,745,551 ("the '551 Patent") and other state-law remedies. [ECF No. 1]. On January 10, 2018, Defendants filed their answer and counterclaims, seeking correction of inventorship of Patent No. 8,961,956 ("the '956 Patent") and unjust enrichment. [ECF No. 20]. On January 31, 2018, Plaintiffs filed a motion to dismiss the counterclaims, [ECF No. 21], which the Court denied on September 28, 2018, [ECF No. 37]. On August 28, 2019, Defendants filed an amended answer and counterclaim complaint, which added a claim for correction of inventorship on Patent No. 8,962,321 ("the '321 Patent"). [ECF No. 91]. On September 6, 2019, Plaintiffs answered the counterclaims, [ECF No. 92], and on October 3, 2019, Plaintiffs filed an amended complaint, [ECF No. 113]. Defendants filed a second amended answer on October 17, 2019. [ECF No. 114].

Plaintiffs filed their motion for partial summary judgment on December 19, 2019, [ECF No. 127], seeking (1) summary judgment on their claim to add Dr. Robert Lanza ("Dr. Lanza") and Dr. Erin Kimbrel ("Dr. Kimbrel") as co-inventors on the '551 patent; (2) summary judgment to reject Defendants' affirmative defenses to Plaintiffs' breach of contract claim; and (3) summary judgment on Defendants' unjust enrichment counterclaim solely to preclude Defendants from seeking monetary damages on that claim, [ECF No. 128-1 at 5–6]. Defendants filed their motion for partial summary judgment on December 19, 2019, [ECF No. 131], seeking summary judgment on Plaintiffs' state-law claims (Counts III–VII) on the grounds that they are barred by their respective statutes of limitations, [ECF No. 132 at 7]. Defendants also seek summary judgment on Plaintiffs' breach of contract claim (Count VIII), arguing that there is no

contract. [Id. at 23]. The parties each filed oppositions and reply briefs and the motions are now ripe for resolution. See [ECF Nos. 142, 145, 155, 161].

### B. Factual Summary

Except as otherwise noted, the following facts are not in dispute.

Drs. Kimbrel and Lanza developed a method for making mesenchymal stem cells ("MSCs") from a human embryonic stem cell using a cell called a hemangioblast as an intermediate. [ECF No. 130-1 ¶ 26; ECF No. 146 ¶ 26]. Astellas referred to these cells as "HB-MSCs" to denote that the MSCs had been derived from hemangioblasts. [ECF No. 130-1 ¶ 28; ECF No. 146 ¶ 28]. In July 2010, Drs. Kimbrel, Lanza, Wang, and Xu embarked on a scientific collaboration. [ECF No. 133 ¶ 1; ECF No. 144-1 ¶ 1; ECF No. 130-1 ¶ 29]. Dr. Kimbrel provided Drs. Wang and Xu with her confidential protocol for making hemangioblasts from human embryonic stem cells, and for making HB-MSCs. [ECF No. 133 ¶ 2; ECF No. 113 ¶ 35; ECF No. 130-1 ¶ 29; ECF No. 146 ¶ 29]. The parties dispute the purposes for which the protocols were shared. Plaintiffs maintain that their disclosure of the protocols was for the limited purpose of allowing Drs. Wang and Xu to use the cells in connection with an animal model for multiple sclerosis. [ECF No. 130-1 ¶ 30]. Defendants claim that the disclosure was not limited to this purpose. [ECF No. 146 ¶ 30].

On July 12, 2012, Drs. Wang and Xu filed U.S. Provisional Patent Application No. 61/670,787. [ECF No. 130-1 ¶ 31; ECF No. 146 ¶ 31]. Plaintiffs argue that the provisional application led to the '551 patent, [ECF No. 130-1 ¶ 33], while Defendants counter that this mischaracterizes the patent application process. [ECF No. 146 ¶ 33]. The '551 patent cites the 61/670,787 provisional application as a "related U.S. application." [ECF No. 136-36 at 1 ('551 patent)].

The parties dispute whether Drs. Wang and Xu's provisional application disclosed and claimed as their own the method for making HB-MSCs that Dr. Kimbrel shared with them, [ECF No. 130-1 ¶ 32; ECF No. 146 ¶ 32], and whether the '551 patent discloses Dr. Kimbrel's method, [ECF No. 130-1 ¶ 34; ECF No. 146 ¶ 34]. Claim 1 of the '551 patent is the only independent claim, which sets forth a method of deriving HB-MSCs that includes a step of culturing the cells serum free, feeder free, and with a GSK3 inhibitor. [ECF No. 130-1 ¶¶ 35, 36; ECF No. 146 ¶¶ 35, 36]. This step was not part of the protocol that Dr. Kimbrel shared with Drs. Wang and Xu. See [ECF No. 130-1 ¶ 37; ECF No. 146 ¶ 37]. The parties dispute whether this step is the sole basis for Defendants' theory that Drs. Wang and Xu should be inventors on the '551 patent. [ECF No. 130-1 ¶ 37; ECF No. 146 ¶ 37].

## II.    LEGAL STANDARD

Summary judgment is appropriate where the movant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. When reviewing the record, the court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Id. The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported

4

speculation," Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Once the movant takes the position that the record fails to make out any trial-worthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. No. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013).

## III.   DISCUSSION

### A.   Inventorship

Plaintiffs seek summary judgment to add Drs. Kimbrel and Lanza as co-inventors on the '551 patent issued to Defendants. [ECF No. 128-1 at 5]. Defendants claim that, although the '551 patent includes steps from the HB-MSC protocol provided by Drs. Kimbrel and Lanza, these were not inventive contributions because they were contained in prior art at the time of the '551 Patent Cooperation Treaty ("PCT") filing. [ECF No. 145 at 4–5].

"A person who alleges that [he or she] is a co-inventor of the invention claimed in an issued patent who was not listed as an inventor on the patent may bring a cause of action to

correct inventorship in a district court under 35 U.S.C. § 256." Vapor Point LLC v. Moorhead, 832 F.3d 1343, 1348 (Fed. Cir. 2016) (quoting Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1357 n.1 (Fed. Cir. 2004)), cert. denied sub nom. Nanovapor Fuels Grp., Inc. v. Vapor Point, LLC, 137 S. Ct. 1121 (2017); see 35 U.S.C. § 256 (2012) (permitting correction of inventorship "[w]henever . . . through error an inventor is not named in an issued patent"). "Inventorship is a mixed question of law and fact: The overall inventorship determination is a question of law, but it is premised on underlying questions of fact." Eli Lilly, 376 F.3d at 1362. Since "[p]atent issuance creates a presumption that the named inventors are the true and only inventors," to establish co-inventorship, the alleged co-inventor "must prove [his or her] contribution to the conception of the claims by clear and convincing evidence." Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460–61 (Fed. Cir. 1998). "Summary judgment is properly granted if the evidence, when viewed in a light most favorable to the non-moving party, fails to establish the inventorship of an omitted inventor by clear and convincing evidence." Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311, 1327 (Fed. Cir. 2004).

The Federal Circuit has explained that "[a]ll that is required of a joint inventor is that he or she (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art." Israel Bio-Eng'g Project v. Amgen, Inc., 475 F.3d 1256, 1263–64 (Fed. Cir. 2007) (quoting Pannu v. Iolab Corp., 155 F.3d 1344, 1351 (Fed. Cir. 1998)). A co-inventor does not need to make a contribution to every claim of a patent. Ethicon, 135 F.3d at 1460. Nor does a co-inventor need to contribute to the conception of all the limitations in a single claim. Eli Lilly,

376 F.3d at 1361.  "The determination of whether a person is a joint inventor is fact specific, and no bright-line standard will suffice in every case."  Fina Oil & Chem., 123 F.3d at 1473.

Defendants do not dispute that Drs. Kimbrel and Lanza provided them with the protocol to generate HB-MSCs, [ECF No. 146 ¶¶ 29, 38; ECF No. 129-10 at 6 (Defendants' amended response to Plaintiffs' Interrogatory No. 1)], nor did Defendants' experts opine on whether Drs. Kimbrel and Lanza should be named as co-inventors, [ECF No. 130-1 ¶¶ 59–61; ECF No. 146 ¶¶ 59–61, 66].  Defendants' sole contention in its Opposition is that any contributions made by Drs. Kimbrel and Lanza to the '551 patent were "public and thus prior art by the time the Defendants filed the application that gave rise to the '551 patent" in June 2013.[1]  [ECF No. 145 at 4, 7].

This statement, however, contradicts a statement made, under oath, by Drs. Wang and Xu to the U.S. Patent and Trademark Office ("PTO") in their response to an office action that rejected claims in their patent application—including the disputed Claim 1.  See [ECF No. 113-5].  Drs. Wang and Xu represented that the provisional application filed by Dr. Lanza on November 30, 2011, which would later become the '321 patent, "does not constitute prior art . . . ."  [Id. at 8 (emphasis in original)].  Their declaration to the PTO reiterates this: "We had possession of the Invention in the United States of America before November 30, 2011, the priority date of WO 2013/082543 to Lanza et al.  We also had possession of the invention in the United States of America before June 6, 2013, the publication date of WO 2013/082543 to Lanza et al."  [Id. at 12].  Drs. Wang and Xu signed the declaration, stating, "We hereby declare that all statements made herein of our own knowledge are true . . . ."  [Id. at 14].

---

[1] Defendants filed a provisional application covering HB-MSCs on July 12, 2012.  [ECF No. 130-1 ¶ 81; ECF No. 146 ¶ 81; ECF No. 136-36 at 1].

7

Defendants thus clearly stated, under oath, that the '321 patent was not prior art. See [ECF No. 113-5]. Where the Federal Circuit has held that a party cannot claim something as prior art and later recant this position, the opposite must also hold true. See Celorio Garrido v. Holt, 547 F. App'x 974, 978 (Fed. Cir. 2013) ("Our law establishes that a patentee cannot advocate one position during reexamination, and then, when that position has been accepted by the PTO, reverse its position on appeal."); Tyler Refrigeration v. Kysor Indus. Corp., 777 F.2d 687, 690 (Fed. Cir. 1985) (affirming a lower court decision that held a party to its admission to the PTO); In re Fout, 675 F.2d 297, 300 (C.C.P.A. 1982) ("Valid prior art may be created by the admissions of the parties."); In re Nomiya, 509 F.2d 566, 571 (C.C.P.A. 1975) ("By filing an application containing Figs. 1 and 2, labeled prior art, ipsissimis verbis, and statements explanatory thereof appellants have conceded what is to be considered as prior art in determining obviousness of their improvement."). Defendants made representations to the PTO under oath and must be bound by them.

Without their prior art argument, Defendants have no factual basis to dispute the other two grounds for inventorship: namely, that Drs. Kimbrel and Lanza contributed to the conception or reduction to practice of the invention, or that they made a significant contribution to the invention. See Israel Bio-Eng'g Project, 475 F.3d at 1263. Defendants admit that Plaintiffs shared their protocol prior to it becoming public and that the protocol appears in Defendants' '551 patent. [ECF No. 145 at 5 ("There is likewise no dispute that the basic form of those steps appear among the steps recited in Claim 1 of the '551 patent."). Defendants also acknowledge in a footnote in their opposition that they may have had an obligation to name "Plaintiffs as co-inventors on the '551 Provisionals, before the '321 PCT published and the Plaintiffs['] portion of the protocol became public." [ECF No. 145 at 12 n.20]. As a result, Plaintiffs have "prove[n]

8

[their] contribution to the conception of the claims by clear and convincing evidence." Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1461 (Fed. Cir. 1998). Plaintiffs' motion for partial summary judgment to add Drs. Kimbrel and Lanza as co-inventors to the '551 patent, [ECF No. 127], is therefore GRANTED.

### B. Unjust Enrichment and Restitution

Plaintiffs seek partial summary judgment on Defendants' unjust enrichment counterclaim on the basis that Defendants failed to provide evidence of monetary damages as to this claim. [ECF No. 128-1 at 35]. Defendants do not directly dispute this argument, but instead assert that they are pursuing equitable remedies through their unjust enrichment counterclaim, including the assignment of the '956 and '321 patents. [ECF No. 145 at 19].

Unjust enrichment is defined as "retention of money or property of another against the fundamental principles of justice or equity and good conscience." Santagate v. Tower, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005) (citation omitted).[2] To succeed on a claim of unjust enrichment, a plaintiff must show "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (citation omitted).

The party pursuing a claim of unjust enrichment bears the burden of demonstrating the amount of defendant's benefit, or gain:

> The [Plaintiff's] burden was to prove by a preponderance of the evidence that [Defendant] was 'unjustly enriched by the acquisition of title to identifiable

---

[2] The parties do not dispute that Massachusetts law applies to their state-law claims. [ECF No. 113 ¶ 9 ("Additional claims arise under Massachusetts state tort law . . . ."); ECF No. 132 at 12 n.10 ("Massachusetts law applies . . . .")].

9

> property at the expense of the [Plaintiff] or in violation of the [Plaintiff's] rights.' Included within this burden is the obligation of the [Plaintiff] to present evidence of the total or gross amount of the defendant's gain, or a reasonable approximation thereof.

Sacco v. Circosta, No. 17-P-251, 2018 Mass. App. Unpub. LEXIS 454, at *4 (Mass. App. Ct. 2018) (internal citations omitted) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 55(1), at 296 (2011)); see also Bonina v. Sheppard, 78 N.E.3d 128, 134 (Mass. App. Ct. 2017) ("Moreover, in the present case, neither the plaintiff nor the defendant presented evidence regarding other possible measures of unjust enrichment, such as the increased value of the home resulting from the materials and the services.  As such, the trial judge had no other reliable, measurable basis on which to calculate the award.").  The First Circuit has affirmed lower court decisions denying restitution on an unjust enrichment claim where there was a failure to establish the amount of damages or the value of the benefit conferred.  See Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 70 (1st Cir. 2001) ("[Plaintiff's] failure to introduce adequate evidence regarding the value of the [property] precludes its restitution claim on a more fundamental level: without adequate evidence of the value left in [Defendant's] hands at the end of the day, there is no proof that [Defendant] experienced a net benefit . . . .").

Here, Defendants did not serve an opening expert report on monetary damages, [ECF No. 130-1 ¶ 100; ECF No. 146 ¶ 100], and their rebuttal expert on Astellas' damages claims did not address Defendants' unjust enrichment counterclaim or conduct an analysis of damages, royalties, or the reasonable value of any benefit conferred.  [ECF No. 130-1 ¶ 104; ECF No. 146 ¶ 104].  Defendants' other experts also did not address this issue.  [ECF No. 130-1 ¶¶ 107–08, 111–12, 115–16; ECF No. 146 ¶¶ 107–08; 111–12; 115–16].  Further, Defendants acknowledge that they "are not asserting specific financial damages."  [ECF No. 146 ¶ 96].

10

Defendants' failure to provide expert or other evidence in support of a specific restitution award precludes their ability to recover monetary damages based on unjust enrichment. Plaintiffs' motion for partial summary judgment on the issue of monetary damages for Defendants' unjust enrichment claim, [ECF No. 127], is therefore GRANTED.  Should Defendants succeed in their unjust enrichment counterclaim, they will be limited to equitable relief, excluding restitution or other monetary relief.

### C. Plaintiffs' State-law Claims

Defendants seek summary judgment on Plaintiffs' state-law claims of conversion, unjust enrichment, unfair trade practices, misappropriation of trade secrets, and negligent misrepresentation (Counts III–VII), arguing that the claims are barred by their respective statutes of limitation.  [ECF No. 132 at 12].  Plaintiffs counter that their state-law claims are timely and that some of their state-law claims are based on conduct that occurred as recently as 2017, bringing them well within any applicable statutes of limitations.  [ECF No. 142-1 at 7]. Defendants also seek summary judgment on Plaintiffs' contract claim based on their contention that there is no contract between the parties.  [ECF No. 132 at 23].  Plaintiffs maintain that a series of emails between the parties constitute a contract.  [ECF No. 142-1 at 21–22].

#### 1. Statutes of Limitations on Counts III–VII

Under Massachusetts law, "actions of tort . . . shall be commenced only within three years next after the cause of action accrues."  Mass. Gen. Laws ch. 260, § 2A.  Massachusetts courts treat claims for conversion, misappropriation of trade secrets, and negligent misrepresentation as torts subject to this three-year statute of limitations.  Patsos v. First Albany Corp., 741 N.E.2d 841, 846 n.6 (Mass. 2001) (stating that three-year limitation in § 2A applies to conversion claims); Stark v. Advanced Magnetics, Inc., 736 N.E.2d 434, 441 (Mass. App. Ct.

11

2000) (stating that three-year limitation in § 2A applies to misappropriation of trade secrets and conversion claims); Solomon v. Birger, 477 N.E.2d 137, 140–41 (Mass. App. Ct. 1985) (stating that misrepresentation actions sound in tort and are subject to a three-year limitations period). Claims arising under Chapter 93A "shall be commenced only within four years next after the cause of action accrues." Mass. Gen. Laws ch. 260, § 5A; see Latson v. Plaza Home Mortg., Inc., 708 F.3d 324, 326 (1st Cir. 2013) ("The limitations period for chapter 93A actions is four years from injury.").

Unjust enrichment, a claim sounding in equity, can be subject to a three-year statute of limitations if the claim arises from a tort, or a six-year statute of limitations if the claim arises from a contractual dispute. See Epstein v. C.R. Bard, Inc., No. 03-12297, 2004 U.S. Dist. LEXIS 13384, at *8 (D. Mass. July 19, 2004) (citing Desmond v. Moffie, 375 F.2d 742, 743 (1st Cir. 1967)). "The court must look to the 'gist of the action' or the essential nature of the plaintiff's claim in determining what statute of limitations to apply." Palandjian v. Pahlavi, 614 F. Supp. 1569, 1577 (D. Mass. 1985) (internal citations omitted). Plaintiffs' amended complaint frames their unjust enrichment claim as a misappropriation of intellectual property. [ECF No. 113 ¶¶ 65–69]. For example, Plaintiffs state that "Defendants accepted and retained Plaintiffs' valuable intellectual property, and used the intellectual property to their own advantage, at Plaintiffs' expense." [Id. ¶ 67]. As noted supra, misappropriation of trade secrets is a tort subject to a three-year statute of limitations. Therefore the Court will apply a three-year statute of limitations to Plaintiffs' unjust enrichment claim. See Palandjian, 614 F. Supp. at 1577.

A cause of action for tort accrues "when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct." Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 741 (Mass. 1990); see

12

Sheedy v. Deutsche Bank Nat'l Tr. Co. (In re Sheedy), 801 F.3d 12, 20 (1st Cir. 2015) (citing Bowen).  The "discovery rule" is also applicable in a Chapter 93A action.  Monteferrante v. Williams-Sonoma, Inc., 241 F. Supp. 3d 264, 271 (D. Mass. 2017) (citing Cambridge Plating Co. v. NAPCO, Inc., 991 F.2d 21, 25 (1st Cir. 1993)).

> The test for whether a plaintiff should have discovered necessary facts is an objective one.  We look first to whether sufficient facts were available to provoke a reasonable person in the plaintiff's circumstances to inquire or investigate further.  'A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, but such suspicions do give rise to a *duty to inquire* into the possible existence of a claim in the exercise of due diligence.'  Once a duty to inquire is established, the plaintiff is charged with the knowledge of what he or she would have uncovered through a reasonably diligent investigation.  The next question is whether the plaintiff, if armed with the results of that investigation, would know enough to permit a reasonable person to believe that she had been injured and that there is a causal connection between the [defendant] and her injury.  Definitive knowledge is not necessary.

McIntyre v. United States, 367 F.3d 38, 52 (1st Cir. 2004) (internal citations omitted) (quoting Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998)).

Defendants claim that Plaintiffs were on inquiry notice of Defendants' allegedly tortious actions by June 2013, when Defendant ImStem filed the international patent application ("PCT") that was related to Defendants' '551 patent.  [ECF No. 132 at 16–17].  Defendants cite a June 2013 e-mail from Dr. Kimbrel in which she referenced an article where Defendants mentioned a patent application as evidence that she knew or should have known that Defendants were "attempting to commercialize the very technology Plaintiffs claim as [their] own."  [Id.].  Plaintiffs state that their first "hint" of Defendants' alleged wrongdoing did not arise until February 4, 2014, when Defendants' PCT was published.  [ECF No. 142-1 at 8–9].  Plaintiffs note, however, that a mere hint is insufficient to impute knowledge of the potential harm caused by Defendants and so did not trigger the statute of limitations period on their claims.  [Id. at 9].  Alternatively, Plaintiffs state that even if that PCT was sufficient to put them on notice, they

13

investigated Defendants based on information that was publicly available at that time and, by June 2014, found they could not yet determine whether Defendants might be using their technology.  [Id. at 11].

If Defendants are correct, Plaintiffs' November 2017 complaint would have been filed outside of the three-year statute of limitations for Counts III (conversion), IV (unjust enrichment sounding in tort), VI (misappropriation of trade secrets), and VII (negligent misrepresentation), and outside of the four-year statute of limitations for Count V (Chapter 93A).  If Plaintiffs are correct, they did not have actual knowledge of Defendants' alleged misuse of confidential information until the '551 patent issued in August 2017, making their November 2017 complaint timely.

Whether a plaintiff should have discovered a tort is a "highly fact- and case-specific" inquiry.  McIntyre, 367 F.3d at 52.  "Where compliance with a statute of limitations is at issue, 'factual disputes concerning when a plaintiff knew or should have known of his cause(s) of action are to be resolved by the jury.'"  Patsos, 741 N.E.2d at 847 (quoting Riley v. Presnell, 565 N.E.2d 780 (Mass. 1991).  "Ultimately, the question of when a plaintiff should have known and when a plaintiff should have asserted her rights, are questions of fact 'often unsuited for summary judgment' unless 'the facts regarding discovery of harm are undisputed.'"  Stanley v. Schmidt, 369 F. Supp. 3d 297, 314–15 (D. Mass. 2019) (quoting Mass. Housing Opportunities Corp. v. Whitman & Bingham Associates, P.C., 983 N.E.2d 734, 737 (Mass. App. Ct. 2013)).  The parties dispute the time by which Plaintiffs knew or should have known that Defendants were pursuing patents alleged to cover the Plaintiffs' HB-MSC technology.  This material factual dispute precludes summary judgment on Plaintiffs' state-law claims, Counts III-VII.  See

14

Cochran, 328 F.3d at 6.  Defendants' motion for summary judgment on these claims, [ECF No. 135], is therefore DENIED.

        2.        Absence of a Contract

Defendants argue that because there was no contract between Drs. Kimbrel, Lanza, Wang, and Xu, Plaintiffs' breach of contract claim must fail.  [ECF No. 132 at 23].  Defendants also assert that any contract would have been entered into before Drs. Wang and Xu formed ImStem and would therefore not be binding on the company.  [Id. at 26].  The alleged contract is a series of emails exchanged among Drs. Kimbrel, Wang, and Xu between March 2011 and April 2012.  [ECF No. 128-1 at 27–28; ECF No. 132 at 23].

As a preliminary matter, an exchange of e-mail communications can constitute a contract under Massachusetts law.  Fecteau Benefits Grp., Inc. v. Knox, 890 N.E.2d 138, 145 (Mass. App. Ct. 2008) (holding that an e-mail exchange between parties constituted a clear and complete agreement).  In order to prove the existence of a contract that Defendants could have breached, Plaintiffs bear the burden of proving that there was an "agreement between the parties on the material terms of that contract, and [that] the parties . . . ha[d] a present intention to be bound by that agreement."  Situation Mgmt. Sys. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000); Moore v. La-Z-Boy, Inc., 639 F. Supp. 2d 136, 140 (D. Mass. 2009) (citing Canney v. New England Tel. & Tel. Co., 228 N.E.2d 723 (Mass. 1967)) (stating that plaintiffs bear the burden of proof as to the existence of a contract).  "All the essential terms of a contract must be [sufficiently] definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined."  Moore, 639 F. Supp. 2d at 140 (alteration in original) (quoting Cygan v. Megathlin, 96 N.E.2d 702, 703 (Mass. 1951)).  Although all essential terms must be present, "[i]t is not required that all terms of the

agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract." Situation Mgmt. Sys., 724 N.E.2d at 703.

In the March 28, 2011 e-mail chain, Dr. Kimbrel agreed to provide Dr. Wang with "data for MSC differentiation," with the caution that "we are a company and have not yet filed our patent for the MSC stuff, please DO NOT distribute the slides to anyone else." [ECF No. 129-23 at 2]. She further asked Dr. Wang to limit her use of the data to "your internal departmental presentation or Xu Lab meetings. Please please do not use the data for any other purpose." [Id.]. Dr. Wang responded, "I will only use it for departmental presentation." [Id.].

In a December 2011 e-mail chain, Dr. Kimbrel wrote to Dr. Wang, this time cc'ing Dr. Xu, and referenced "legal implications and intellectual property rights concerning the very use of our hemangioblast-derived MSCs," noting that in order to continue their collaboration, they would need to "clearly define and agree upon the intended use of our cells, endpoints of the study, authorship, and itemized budget." [ECF No. 129-24 at 2]. In a section outlining requirements for authorship on projects involving Astellas' cells, Dr. Kimbrel wrote, "Detailed, proprietary protocols, cells, and preliminary data offered by ACT[3] must be kept in the strictest of confidence. Collaborators are NOT to share any cells or protocols with third parties without the explicit written consent of ACT." [Id. at 3]. Although the e-mail did not specify payment amounts, Dr. Kimbrel stated that "ACT can only offer limited funds for a defined set of experiments." [Id.]. She further noted that "a written budget proposal . . . must be provided in advance." [Id.]. Dr. Kimbrel asked Drs. Wang and Xu to respond and "let us know if you agree

---

[3] Astellas was previously named Advanced Cell Technology, or "ACT." [ECF No. 130-1 ¶ 87; ECF No. 146 ¶ 87].

16

to the above terms." [Id.]. Dr. Xu replied, "I don't think we have any problem with these." [Id. at 2].

In April 2012, Dr. Kimbrel wrote to Drs. Wang and Xu to discuss authorship on two papers related to their collaboration. [ECF No. 129-25 at 3]. She agreed to share her findings with them in support of their paper if they would allow her to use their findings in her paper. [Id.]. In closing, Dr. Kimbrel stated, "our company's very existence depends upon maintaining control of proprietary methodology that we generate here." [Id.]. Dr. Xu responded to this e-mail, stating, "We like you[r] suggestions. Let's move on asap." [Id. at 2]. Dr. Wang responded separately, stating, "Yes we agree on your suggestion . . . ." [ECF No. 129-26 at 3].

"The controlling fact" for the purpose of determining whether a contract exists "is the intention of the parties." McCarthy v. Tobin, 706 N.E.2d 629, 631 (Mass. 1999); see also Confederate Motors, Inc. v. Terny, 831 F. Supp. 2d 414, 423 (D. Mass. 2011) (citing McCarthy). "[S]o long as the evidence does not point unerringly in a single direction but is capable of supporting conflicting inferences, the question of whether a contract has been formed between two parties is a question of fact to be determined by the factfinder." Crellin Techs. v. Equipmentlease Corp., 18 F.3d 1, 7 (1st Cir. 1994).

As to manifestation of assent, Defendants say that Drs. Wang and Xu provided "quick" and "glib" responses that do not manifest clear assent to varying terms on varying topics (e.g., authorship, sharing of data). [ECF No. 132 at 26]. With regard to the December 2011 e-mail chain, Defendants note that Dr. Xu wrote only that he did not "think" that he and Dr. Wang had a problem with Dr. Kimbrel's terms. [Id.]. Plaintiffs point to the language used in the replies to Dr. Kimbrel as manifestations of assent from Drs. Wang and Xu: "We like your suggestions. Let's move on asap," "Yes we agree on your suggestion," and "I don't think I have any problem

17

with these." [ECF No. 142-1 at 23]. Whether Drs. Kimbrel, Lanza, Wang, and Xu intended to be bound to a contract under the terms set forth in their e-mail correspondence is, therefore, a disputed question of material fact that cannot be resolved at summary judgment. See Cochran, 328 F.3d at 6; Grol v. Safelite Grp., Inc., 297 F. Supp. 3d 241, 247 (D. Mass. 2018) (denying summary judgment where there was a question of fact regarding the parties' assent to be bound by contract). Defendants' partial motion for summary judgment on Plaintiffs' breach of contract claim, [ECF No. 131], is accordingly DENIED.

### D. Defendants' Affirmative Defenses to Plaintiffs' Breach of Contract Claim

Plaintiffs ask the Court to reject Defendants' affirmative defenses to Plaintiffs' breach of contract claim, arguing that Defendants have offered no facts in support of their five asserted defenses (failure of consideration, statute of frauds, lack of meeting of the minds, no damages, and failure to mitigate). [ECF No. 128-1 at 5–6]. Defendants contend that "there was nothing more to identify" beyond the three e-mails Plaintiff claims establish a contract, and that their defenses "required little more." [ECF No. 145 at 14].

It is Plaintiffs' burden to prove the existence of a contract. Situation Mgmt. Sys., 724 N.E.2d at 703. Defendants included affirmative defenses that call into question the existence and validity of any purported contract in their answer to the amended complaint. [ECF No. 114 at 13–14]. Plaintiffs claim that Defendants' answer did not adequately establish the pled defenses. [ECF No. 128-1 at 29]. Unlike claims in a complaint, however, the Federal Rules "require only that a defendant 'state' her defense" in the affirmative defenses contained in an answer. Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc., 287 F.R.D. 119, 122 (D. Mass. 2012). Plaintiffs' evidence is limited to a series of e-mail communications and Defendants have stated

18

their intention to rely on these e-mails to support their affirmative defenses. [ECF No. 145 at 14].

Plaintiffs further maintain that Defendants did not update their initial interrogatory response to a question seeking support for their affirmative defenses to the contract claim. [ECF No. 128-1 at 30]. Defendants' initial response was limited to identifying the three e-mails Plaintiffs cited in support of their breach of contract claim. [ECF No. 145 at 15]. "A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response." Fed. R. Civ. P. 26(e). Defendants acknowledge that they did not supplement their response with additional facts to support their defenses, nor did they take additional fact depositions on the issue. [ECF No. 130-1 ¶ 75–76; ECF No. 146 ¶ 75–76]. Despite Plaintiffs' assertions to the contrary, Defendants do not present new evidence in their motion for summary judgment on the contract claim but focus on the three e-mails alleged to form a contract between the parties. [ECF No. 155-1 at 11; ECF No. 132 at 23–27]. Beyond the e-mails, Defendants mention several facts, including the founding date of ImStem and an e-mail produced by Plaintiffs, that cannot be new information to Plaintiffs at this late stage. [ECF No. 132 at 26, 27].

Lastly, Plaintiffs state that they presented legal opinions on the breach of contract claim from one expert, Dr. Fortier, and that Defendants failed to respond to this expert or present their own expert on the claim. [ECF No. 128-1 at 31]. But Dr. Fortier is not an attorney and was not qualified to provide a legal opinion regarding the existence of a contract or its breach. [ECF No. 128-1 at 30; ECF No. 147-15 at 2 (deposition testimony of Dr. Fortier in which she repeatedly concedes, "I'm not a lawyer"); ECF No. 129-1 at 54–56 ("With the above facts in mind and

19

based on my understanding of contract law, it is my opinion that Defendants are liable for breach of contract.")]. Defendants were not obligated to provide an expert report on this legal issue.

Defendants appear to be content with the facts they have in hand. See [ECF No. 145 at 14 ("Their affirmative defenses required little more . . . .")]. Thus, Defendants are not obligated to provide new facts if they feel the record is sufficient for them to proceed to trial on the facts in evidence. Plaintiffs' motion for partial summary judgment on Defendants' affirmative defenses, [ECF No. 127], is therefore DENIED.

### IV.   CONCLUSION

For the reasons set forth herein, the Court enters the following Order on the parties' respective motions for partial summary judgment:

1. Plaintiffs' motion for partial summary judgment on their claim to add Dr. Lanza and Dr. Kimbrel as co-inventors on the '551 patent, [ECF No. 127], is GRANTED.

2. Plaintiffs' motion for partial summary judgment on Defendants' unjust enrichment counterclaim solely to preclude Defendants from seeking monetary damages on that claim, [ECF No. 127], is GRANTED.

3. Defendants' cross-motion for partial summary judgment on Plaintiffs' state-law claims on statute of limitations grounds (Counts III–VII), [ECF No. 131], is DENIED.

4. Defendants' cross-motion for partial summary judgment on Plaintiffs' breach of contract claim (Count VIII), [ECF No. 131], is DENIED.

5. Plaintiffs' motion for partial summary judgment to reject Defendants' affirmative defenses to Plaintiffs' breach of contract claim, [ECF No. 127], is DENIED.

**SO ORDERED.**

March 4, 2020                                               /s/ Allison D. Burroughs
                                                                    ALLISON D. BURROUGHS
                                                                    U.S. DISTRICT JUDGE