UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASTELLAS INSTITUTE FOR REGENERATIVE MEDICINE, and STEM CELL & REGENERATIVE MEDICINE INTERNATIONAL, INC., <br><br>    Plaintiffs, <br><br>v. <br><br>IMSTEM BIOTECHNOLOGY, INC., XIAOFANG WANG, and REN-HE XU, <br><br>    Defendants. | C.A. NO. 1:17-cv-12239-ADB <br><br>**ORAL ARGUMENT REQUESTED** |

**OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE*
TO EXCLUDE ARGUMENT, EVIDENCE, AND TESTIMONY
CONFLICTING WITH DEFENDANTS' ADMISSION IN PLEADINGS**

Pursuant to this Court's Amended Scheduling Order and Pretrial Order dated September 26, 2019 (Dkt. 106), Fed.R.Civ.P. 7, and L.R. 7.1, Defendants Imstem Biotechnology, Inc. ("Imstem"), Xiaofang Wang ("Wang"), and Ren-He Xu ("Xu") (collectively "Defendants") hereby file their opposition to Plaintiffs' Motion *in Limine* to Exclude Argument, Evidence, and Testimony Conflicting With Defendants' Admission In Pleadings (Dkt. 174). Although styled as a motion *in limine*, the Plaintiffs' motion ignores some of the scientific ambiguities at issue in the case, and essentially seeks a directed verdict before the trial has begun. The Defendants object and ask that it be denied.

**ARGUMENT**

As a preliminary matter, Plaintiffs fail to address the standard for determining whether an alleged judicial admission is binding. Because of their binding consequences, the Court

1

must carefully scrutinize and parse an alleged judicial admission. *See Harrington v. City of Nashua*, 610 F.3d 24, 31 (1st Cir. 2010) ("[T]here are limits to what parties can admit, so it is important to parse the particular [alleged] admission in each case.") (internal citations omitted). "[J]udicial admissions generally arise only from deliberate voluntary waivers that expressly concede for the purposes of trial the truth of an alleged fact." *U.S. v. Belculfine*, 527 F.3d 841, 944 (1st Cir. 1975). "To be binding, a judicial admission must be 'clear.'" *Harrington*, 610 F.3d at 31 (quoting *Comm'l Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). To be binding, a judicial admission must also be unequivocal. *Anderson v. C.I.R.*, 698 F.3d 160, 167 (3d Cir. 2012). A movant's interpretation of the alleged admissions must be "compelled" by the language of the provisions of the Answer they cite. *Devona v. Zeitels*, No. 13-cv-10952-IT, 2014 WL 5454214, at *3 (D. Mass. Oct. 27, 2014) (quoting *Harrington*, 610 F.3d at 31) ("Where a party's suggested interpretation of an allegation is 'not compelled by the language of the allegation,' the court is not required to accept that interpretation as admitted.") If there is any doubt or ambiguity or gray area, the alleged admission is not clear and not binding. *See Harrington*, 610 F.3d at 31; *see also* Fed.R.Civ.P. 8(e) ("Pleadings must be construed so as to do justice."). For example, in *Rielly v. City of Providence*, the Rhode Island Federal District Court held that an admission that one of the defendants ordered "four patrolmen to clear the sidewalk" was not an admission that the plaintiff was not allowed on the sidewalk: the court explained, "It is not clear from the face of Defendants' statement of undisputed facts whether the phrase 'clear the sidewalk' refers to the entire sidewalk or merely a portion of it." No. 10-461 S, 2013 WL 1193352, at *9 n.10 (D.R.I. Mar. 22, 2013).

      Judged against this standard, it is clear that the Defendants' responses to the Plaintiffs' allegations do not give rise to a judicial admission that would bar the Defendants from

presenting evidence and argument at trial concerning the development of mesenchymal stem cells ("MSCs").

This patent case is a highly complex, science-driven, inventorship dispute concerning the differentiation of human embryonic stem cells. The scientific evidence could not be more complicated. The disputed facts concern cutting-edge technologies in an area of science that is still not fully understood. Indeed, several authors have noted that the field is not only poorly understood, the key term at issue in Plaintiffs' Motion ("MSC") is poorly understood:

> Various populations of cells in the adult human body have been the subject of controversy since the early 2000s. Contradictory findings about these haphazardly termed 'mesenchymal stem cells', including their origins, developmental potential, biological functions and possible therapeutic uses, have prompted biologists, clinicians and scientific societies to recommend that the term be revised or abandoned.

Ex. 1 (Douglas Sipp, Pamela Robey, and Leigh Turner, *Comment: Clear up this Stem-Cell Mess*, 561 Nature 457 (September 27, 2018) at 457.[1]

The confusion in the scientific community, including at the time of the patents-in-suit, about the "MSC" label was and is profound – to the point of questioning whether MSCs even exist:

> In the past few years, however, *there has been further questioning of the MSC as a valid biological entity*. A 2014 study by researchers at the US Food and Drug Administration found almost no agreement in the molecular characterization of MSCs among the investigational new drug applications submitted to the agency. A 2016 study[2] likewise found that various cell populations from different tissues, all classed as MSCs, actually differ drastically in their gene expression and in their ability to differentiate. And last year, *Caplan revealed that he no longer believes that MSCs are stem cells.*

---

[1] All exhibits are attached to the Decl. of Timothy Shannon in Supt of Defs. Oppn. to Pltfs' Motion *in Limine* to Exclude Argument, Evidence, and Testimony Conflicting with Defendants' Admission in Pleadings ("Shannon Decl.").

*Id*. at 458.  The authors then offered a bold solution:

> Dispel the MSC Myth: [T]he community needs to stop subsuming multiple cell types under one catch-all phrase.

*Id*. at 459.

This context is critical for understanding why, in some contexts, the Defendants may have been willing to use "MSC" as a shorthand label whereas at other times – when more precision was needed or when the precise nature of the cells was in doubt (as it was prior to invention of the '956 patent) – the more careful label of "MSC-like" was and is appropriate.  One of the reasons the Defendants should be credited as joint inventors in the '956 Patent is precisely because the "MSCs" Dr. Kimbrel originally presented (she used the quotes herself in her email to the Defendants) were not well understood.  According to the *Nature* article, *supra*, they likely are still not well understood today.

The Plaintiffs are hoping to prevent the Defendants from explaining this subtle – but important – issue to the jury.  Plaintiffs are seeking to impose their own, peculiar, narrow/constrained interpretation of the term, "MSC," and to cherry pick selected portions of legal pleadings that contain ambiguous references to prevent any argument to the contrary.  For example, the Defendants admitted only that Drs. Lanza and Kimbrel had developed "a method" for differentiating stem cells.  They denied the remainder of the Plaintiffs' allegations in Paragraph 3 of the Plaintiffs' Second Amended Complaint.  Similarly, the Defendants admitted in response to Paragraph 7 of the Plaintiff's Second Amended Complaint that Drs. Lanza and Kimbrel possessed a "certain technology" regarding the differentiating of stem cells, but the specific contours of that technology were not spelled out. These vague and ambiguous allegations concerning complicated medical science stand in stark contrast to the judicial admissions present in the cases relied on by the Plaintiffs.  *Compare Pruco Life Insurance v.*

*Wilmington Trust Co.*, 721 F.3d 1 (1st Cir. 2013) (admission that application attached to the complaint was also attached to the insurance policy at issue); *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co,* 976 F.2d 58, 61 (1st Cir. 1992) (Defendant had admitted "clear and express" statement in complaint that contract existed)

Questions about how MSCs are created, differentiated, transformed, improved and utilized are at the core of the parties' dispute. The actual science underlying these questions is difficult to articulate, let alone fully understand. What is clear, however, is that the Defendants have consistently and unequivocally maintained that they invented the technology at issue. The Plaintiffs' motion would prevent them from presenting this position at trial.

Notably absent from the Plaintiffs' motion is any reference to the Defendants' responses to written discovery and deposition questioning. The parties have exchanged tens of thousands of pages of documents, and provided hundreds of pages of deposition testimony in this litigation. The Defendants' position has not fundamentally changed. The defense witnesses were careful to point out at their depositions that a reference to MSCs should be put into the proper "context." Ex. 2 (Dr. Wang Depo. Tr. dated June 14, 2019 ("*Wang I Tr.*")) at 23:4-24. For example, Dr. Wang testified that MSCs can be derived from bone marrow, human embryonic stem cells, and trophoblasts. Ex. 3 (Dr. Wang Depo. Tr. dated July 29, 2019 ("*Wang II Tr.*")) at 274-75. He explained that different types of MSC have different functionality. Ex. 2 (*Wang Tr. I*) at 177:9 to 178:4. During his depositions, Dr. Wang also referred to "so-called MSCs," *Id.* at 237:16-19; as well as "MSC-like cells." Ex. 3 (*Wang II Tr.*) at 302:24. In the same vein, Dr. Xu testified that MSCs were an "arguable cell type" that had not been "clearly identified or confirmed." Ex. 4 (Dr. Xu Depo. Tr. dated July 3 2019) at 24.

In his expert witness report, Dr. Bunnell, one of the Defendants' designated experts, went into great detail about the genesis and identification of MSCs, concluding that "MSC-like" cells was the more accurate term to use. As Dr. Bunnell explained, "[i]t was and is therefore difficult to definitely know or say what is a 'real' MSC, or indeed if there is a standard reference in terms of gene expression profile. It was and is therefore a better practice, when circumstances demand precision rather than shorthand, to more precisely call such cells 'MSC-like.'" Ex. 5 (Opening Expert Report of Bruce Bunnell, Phd. (Oct. 4, 2019) at 6).

On this record, there is no legitimate basis for claiming that the Defendants' position that "MSC" is an imprecise and ambiguous term is a surprise or that it was recently "manufactured" by defense counsel. (Br. at 5). To the contrary, Plaintiffs' suggestion that the Defendants abandoned their scientific position by admitting a portion of an allegation in a pleading is nothing more than wishful thinking or linguistic gymnastics; neither of which is supported by the actual record.

In sum, Plaintiffs' motion ignores the mountains of scientific documentation and testimony that have been exchanged and focuses on a handful of statements made by counsel in legal pleadings that have been carefully harvested and taken out of context. The judicial admissions doctrine, which the Defendants acknowledge and support, prevents unfair surprise and the "sandbagging" of opponents by eleventh hour theories or tactical maneuvering. The Plaintiffs' motion stands the doctrine on its head. By filing the motion, it is the Plaintiffs — not the Defendants — who are advancing a strategy that would be "patently unfair and judicially inefficient." *Pl. Mem* at 5 (quoting *Donald M. Durkin Contracting, Inc. v. City of Newark*, No. CVIA 04-163 GMS, 2006 WL 2724882 at *6 (D. Del. Sept. 22, 2006)).

If the Defendants' witnesses testify in a manner inconsistent with their prior testimony, the proper remedy is to impeach them on cross-examination.  There is no basis for Plaintiffs' request to pre-emptively bar the Defendants from presenting and pursuing the scientific position that they have taken since the beginning of the litigation. The Defendants ask that the Plaintiffs' motion *in limine* be denied.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(c), Defendants respectfully request oral argument. Defendants believe that oral argument will materially assist the Court in rendering a decision on the instant Motion.

March 30, 2020

Respectfully submitted,

IMSTEM BIOTECHNOLOGY, INC., REN-HE XU and XIAOFANG WANG,

By their Attorneys,

/s/ *Timothy R. Shannon*
Timothy R. Shannon, MA Bar # 655325
Martha C. Gaythwaite, MA Bar # 187650
VERRILL DANA LLP
One Portland Square
Portland, Maine 04101
(207) 774-4000
tshannon@verrill-law.com
mgaythwaite@verrill-law.com


Benjamin M. Stern, MA Bar # 646778
VERRILL DANA LLP
One Federal Street, 20th Floor
Boston, Massachusetts 02110
(617) 309-2600
bstern@verrill-law.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 30, 2020, I caused a true copy of the foregoing document to be served upon counsel of record via ECF.

/s/ *Timothy R. Shannon*  
Timothy R. Shannon

13669685_4