UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASTELLAS INSTITUTE FOR REGENERATIVE MEDICINE, and STEM CELL & REGENERATIVE MEDICINE INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> IMSTEM BIOTECHNOLOGY, INC., XIAOFANG WANG, and REN-HE XU, <br><br> Defendants. | C.A. NO. 1:17-cv-12239 ADB |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO KEEP TRIAL OPEN
TO FACILITATE WITNESS TESTIMONY**

Pursuant to Fed.R.Civ.P. 7 and 44.1, as well as L.R. 7.1 and 40.3, Defendants Imstem Biotechnology, Inc. ("Imstem"), Xiaofang Wang ("Wang"), and Ren-He Xu ("Xu") (collectively "Defendants") seek an order scheduling the upcoming trial to begin as planned (September 14, 2020) but to remain open past the planned end date (September 25, 2020) until such time that Dr. Xu (a named Defendant) and Michael Men (Defendant ImStem's CEO) – who are currently in Macau and China, respectively – can testify. Despite their efforts to facilitate trial in the midst of the COVID-19 pandemic, it has come to the Defendants' attention that Chinese and Macau bar Drs. Xu and Men from testifying in the manner the parties discussed at the June 10, 2020 status conference (*i.e.* by video). No fair trial can take place until Dr. Xu and Dr. Men have the ability to reach a country that permits video testimony.

1

## STANDARD

Local Rule 40.3 governs a motion for continuance of a trial, hearing, or any other proceeding. Such a motion "will be granted only for good cause."

## FACTUAL BACKGROUND

As of the date of this Motion we are still in the midst of a global pandemic. *See generally* Dkt. 187 (Motion to Continue original trial date). Defense counsel are still working from laptops at home. Their law offices are still largely shut. The Court is still restricting access to the courthouse.[1]

The parties have attempted to address these problems by agreeing to a bench trial by video. *See* Dkt. 209 (summary of June 9, 2020 status conference); Fed.R.Civ.P. 43(a) ("For good cause in compelling circumstances . . . the court may permit testimony in open court by contemporaneous transmission from a different location."). Defendant Dr. Xu lives in Macau. The CEO of Defendant ImStem, Dr. Men, lives in mainland China.[2] Both Dr. Xu and Dr. Men are slated to testify at the trial. The COVID-19 pandemic has already inhibited their travel.[3] Defendants therefore agreed to a remote/video trial despite the shortcomings inherent in video testimony in an inventorship dispute. Astellas has recently indicated (in the meet-and-confer) that it, too, would like the trial to proceed with all witnesses testifying via video.

---

[1] Gen. Order No. 20-31 (July 15, 2020).

[2] Defendant Dr. Xiaofang Wang lives in Connecticut.

[3] Dr. Xu suffers a medical condition – hypertension – that places him at a higher risk of death if he were to become infected. *See* Declaration of Timothy R. Shannon In Support of Defendants' Motion for Continuance of Trial ("Shannon Decl.") Ex. 1 (*Top Coronavirus Doctor in Wuhan Says High Blood Pressure Is Major Death Risk*, Bloomberg News (Mar. 9, 2020, 12:00 PM), https://www.bloomberg.com/news/articles/2020-03-09/top-virus-doctor-says-high-blood-pressure-is-major-death-risk.). All Exhibits are referred to in this memorandum are attached to the accompanying Shannon Decl.

Unfortunately, in making arrangements necessary to testify remotely, it has come to the Defendants' attention that Chinese and Macau law effectively prohibit video trial testimony in a foreign (*i.e.* U.S.) court.[4]  With respect to China, the U.S. State Department has summarized the law as follows:

> China does **not** permit attorneys to take depositions in China for use in foreign courts. Under its Declarations and Reservations to the Hague Evidence Convention[5] and subsequent diplomatic communications, China has indicated that taking depositions, whether voluntary or compelled, and obtaining other evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its Central Authority under the Hague Evidence Convention.  Consular depositions would require permission from the Central Authority on a case by case basis and the Department of State will not authorize the involvement of consular personnel in a deposition without that permission. Participation in such activity could result in the arrest, detention or deportation of the American attorneys and other participants.

Ex. 3 (U.S. Dep't of State, Bureau of Consular Affairs, Taking Voluntary Depositions of Willing Witnesses, https:// travel.state.gov/content/travel/en/legal/ Judicial-Assistance-Country-Information/China.html (last visited July 20, 2020)) (emphasis in original); *accord Junjiang Ji v. Jling Inc*., No. 15-CV-4194 (SIL), 2019 WL 1441130, at *10 (E.D.N.Y. Mar. 31, 2019), *appeal dismissed sub nom*. *Ji v. Jling Inc*., 799 F. App'x 88 (2d Cir. 2020) (imposing sanctions and striking video trial testimony taken from a witness sitting in China – despite prior court approval of remote video testimony – after litigant was unable to offer the testimony from Taiwan as planned and instead testified from China).

The relevant Chinese statute states that:

---

[4] Counsel for Astellas (who had themselves urged the availability of remote video participation in a letter to this court, *see* Letter from David Frazier, Esq., to Hon. Allison D. Burroughs dated March 10, 2020) flagged the issue of non-U.S. law potentially restricting video participation from abroad in a letter after the status conference.

[5] Ex. 2 (Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, https://www.hcch.net/en/instruments/conventions/full-text/?cid=82 (last visited July 20, 2020)).

> The request for and provision of judicial assistance shall be conducted through the channels stipulated in the international treaties concluded or acceded to by the People's Republic of China.
> . . . .
>
> The embassy or a consulate in the People's Republic of China of a foreign state may serve documents on, investigate, and take evidence from its citizens, provided that the law of the People's Republic of China is not violated and that no compulsory measures are adopted.
>
> Except for the circumstances set forth in the preceding paragraph, *no foreign agency or individual may, without the consent of the competent authorities of the People's Republic of China, serve documents, carry out an investigation or collect evidence* within the territory of the People's Republic of China.

Ex. 4 (Chinese Civil Law Article 277, http://cicc.court.gov.cn/html/1/219/199/200/644.html (last visited July 20, 2020) (emphasis added).[6] Article 277, in turn, is enforceable under Chinese criminal law. *See generally Ji,* 2019 WL 1441130, at *11 (penalties include fines up to $45,000 against lawyers, deportation of "foreign" witnesses).[7] In *Ji*, an expert in Chinese law summarized the law in much the same way as the State Department:

> The law clearly says you cannot conduct investigation or evidence within the border of the People's Republic of China because the witness is in China so the evidence is from China. Every information coming within the border of China.
>
> So that's the law. You cannot do that even by today's technology. You can do in [the United States]. You can do it in Hong Kong.

---

[6] The undersigned counsel are mindful that none of them is licensed to practice in China, and that they are therefore left to rely on official English translations of the Chinese statute, the State Department guidance, and the findings of the Eastern District of New York on a case involving parallel facts.

[7] Though permission from the Central Authority is technically possible, it is almost never given. *See* Ex. 5 (Dan Harris, *Depositions in China: No Can Do*, ChinaLawBlog (Jan. 19, 2009), https://www.chinalawblog.com/2009/01/taking_depositions_in_china_it.html ("Though deposing a Chinese witness in China for a US court case is possible, the post goes on to say that only one such deposition has actually occurred in the last 25 years")); Ex. 6 (Admin., *Restrictions on Taking Deposition Testimony of in China for Use in Foreign Courts*, China Docket Report (Nov. 2, 2018) http://www.chinadocket.com/en/editorials/restrictions-on-taking-deposition-testimony-of-in-china-for-use-in-foreign-courts/ ("Although taking depositions in China is theoretically possible, 'in practice [the Chinese government] so severely restrict them that, for all practical purposes, . . . [they] are simply not going to happen.'") (*citing* Craig Allely, *Successful Depositions in International Litigation*, 37 No. 4 Litigation 12, 13 (2011)).

> And you can do it in Taiwan. But if the witness [is] in China, they [sic] have to come from China, so if you understand the law, that's what the law says.

*Id*. at *5.

With respect to Macau, video trial testimony is likewise barred.[8] According to the Country Profile submitted by Macau to the administrative authority for the Hague Evidence Convention, foreign-court video trial testimony is not permitted:

> [Q] Does Your State, in the application of Article 27 (*i.e.* internal law or practice), allow for a foreign Court to directly take evidence by video-link**?**
>
> [A] NO:  Under the Macao SAR law, only indirect taking of evidence is allowed. Therefore, only lawyers and magistrates of the Macao SAR can raise questions against witnesses (Article 539 of the Macao Civil Procedure Code (CPC), Law No. 10/1999 and Decree-law No. 42/95/M).

Ex. 8 (Macau Country Profile, Taking of Evidence by Video-Link Under the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, https://assets.hcch.net/docs/e9f67556-7fb5-457c-a77d-c247f7ccfc8e.pdf (last visited July 20, 2020) ("Macau Country Profile") at 5;[9] *cf. id*. at ¶ 2 (citing code provisions concerning "Regime

---

[8] The undersigned counsel are mindful that none of them is licensed to practice in Macau, nor able to read the languages in which Macau law and records are kept: Portuguese and Chinese.  *See* Ex. 7 (Governo da Região Administrativa Especial de Macau, Código de Processo Civil, https://bo.io.gov.mo/bo/i/99/40/codprocivpt/ (last visited July 20, 2020) (Portuguese and Chinese text of the Civil Procedure Code)).  Further, English-language resources for Macau are limited.  There is no official English translation of Macau's Civil Procedure Code, for example.  Secondary legal commentary on Macau law is also rare, presumably because the city/state has its own unique legal system for a population of just 690,000.  Further, the U.S. State Department is silent on Macau law.  Defendants are therefore left to rely on the Hague Evidence Convention and the expertise of a Macau legal professor and attorney.

[9] Macau is a Special Administrative Region ("SAR") of the People's Republic of China, retaining some features of sovereignty.  *See* Ex. 9 (Ministry of Foreign Affairs for the People's Republic of China, Macao Special Administrative Region, https://www.fmprc.gov.cn/mfa_eng/ ljzg_665465/zgjk_665467/3572_665469/t17811.shtml (last visited July 19, 2020)).  It submitted its own profile to the Hague Evidence Convention.  *See generally* Ex. 10 (Publication 20: Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, HCCH (2017), https://www.hcch.net/en/instruments/conventions/publications1/?dtid=42&cid=82 (directory of country profiles)).

do depoimento," *i.e.* depositions). This raises a practical bar, since – at this advanced stage of the proceedings – neither Astellas nor the Defendants can conduct a trial through Macau lawyers unfamiliar with the case, the technology, or the parties.

Even if the parties could hire Macau counsel in time for trial (they cannot), the local Macau court would not cooperate. According to at least one Macau legal scholar, under Macau's legacy-Portuguese civil law code, the Macau court would not allow video trial testimony (as distinct from a video deposition) because Macau law includes no provision for video trials:

> According to Article 136 of the Civil Procedure Code of Macau, if the court **is not competent** to do the act required by the foreign court or other competent [sic], then the court shall refuse such requirement. Since there is no provisions in the [Macau] civil procedure code or related legal documents which allow the long-distance trial via video camera, and also considering that it is never occurred for any judicial actions being enforced via video camera, the judge will most likely refuse such request based on the provison [sic] aforementioned.

Ex. 11 (Email from Dr. Li, Associate Professor of Law, Macau University, to Dr. Xu dated July 13, 2020) (emphasis in original); Ex. 12 (unofficial English translation of Article 136 of Macau Civil Procedure Code).[10] Thus, according to Dr. Li, even if Defendants asked this Court to seek judicial assistance, the Macau court once engaged would not authorize trial testimony by video.

Ordinarily the parties could overcome these obstacles by moving the witness to a country whose government does not restrict voluntary participation in foreign trials by video. The conventional choice is Hong Kong.[11] *See, e.g.*, Ex. 14 (Karen Fahr, *The Ultimate Guide to Organizing a Deposition in Hong Kong (Infographic)*, OptimaJuris (June 27, 2019), https://www.optimajuris.com/ultimate-guide-organizing-deposition-hong-kong-infographic/

---

[10] Dr. Zhe Li's faculty profile is attached as Ex. 13.

[11] The undersigned attorneys are mindful that none of them is licensed to practice in Hong Kong, and are therefore left to rely on what few English-language sources are available on the subject.

(advertisement stating, "The good news — taking U.S. depositions in Hong Kong is permissible and in general, you can depose willing witnesses in Hong Kong without any special formalities or involvement of foreign courts.")).  According to the Country Profile submitted by Hong Kong to the administrative authority for the Hague Evidence Convention, foreign-court video trial testimony is permitted in/via Hong Kong:

> [Q] Does Your State, in the application of Article 27 (*i.e.* internal law or practice), allow for a foreign Court to directly take evidence by video-link?
>
> [A] YES.  Section 76(2)(a) of the Evidence Ordinance (Cap.8) provides for the examination of witnesses by any means, including by way of a live television link.

Ex. 15 (Hong Kong Country Profile, Taking of Evidence by Video-Link Under the Hague Convention of March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters at 5, https://assets.hcch.net/docs/ea8352c6-45e6-4ae3-8c39-b22cbc43c8e0.pdf (last visited July 20, 2020).[12]

Unfortunately, that work-around is not available at this time.  Defendants have contacted the U.S. Consulate for Hong Kong and Macau (located in Hong Kong) and have advised that Drs. Xu and Men cannot presently travel there. Ex. 17 (Email from U.S. Consulate General to Hong Kong and Macau, to Travis Waller, Esq., Verrill Dana LLP (July 7, 2020 5:42 AM) ("if the two U.S. citizens are currently in Macau and Zhuhai, they would not be able to travel to Hong Kong with current restriction on entry in place.").[13]

---

[12] *See* Ex. 16 (Hong Kong Gen. L. Ch. 8 ("Evidence Ordinance") § 76, https://www.elegislation.gov.hk/hk/cap8?xpid=ID_1438403565671_003 (last visited July 20, 2020) ("Power of a court in Hong Kong to Give Effect to an Application for Assistance") ("An order under this section shall not require any particular steps to be taken unless they are steps which can be required to be taken by way of obtaining evidence for the purposes of civil proceedings in the court making the order."))

[13] China's recent imposition of the National Security Law has had created civil unrest and further uncertainty for individuals traveling to and from Hong Kong. *See generally* Ex. 18 (Kate Springer, *What will the national security*

As problematic, even if Drs. Xu and Men could get into Hong Kong, both China and Macau would bar their return home.[14] Drs. Xu and Men are both U.S. citizens, not Chinese citizens, and live and work in Macau and China on work visas. Currently, China "has decided to temporarily suspend the entry into China by foreign nationals holding visas or residence permits still valid to the time of this announcement . . . ." *See* Ex. 19 (Press Release, Ministry of Foreign Affairs of the People's Republic of China National Immigration Administration, Ministry of Foreign Affairs of the People's Republic of China National Immigration Administration Announcement on the Temporary Suspension of Entry by Foreign Nationals Holding Valid Chinese Visas or Residence Permits (March 26, 2020), https://www.fmprc.gov.cn/mfa_eng/ wjbxw/ t1761867.shtml); *see also* Ex. 20 (U.S. Dep't of State, Bureau of Consular Affairs, China Travel Advisory, https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/china-travel-advisory.html (last visited July 20, 2020) (same)). Macau has likewise placed a ban on the entry to Macau of foreign nationals. Ex. 21 (Email from U.S. Consulate General to Hong Kong and Macau, to Travis Waller, Esq., Verrill Dana LLP (July 1, 2020, 10:32 PM) ("The Macau Government announced that effective March 25, non-Macau residents who have been to an overseas territory in the past 14 days will be denied entry . . . ."); Ex. 22 (Staff Writer, *HK extends quarantine for arrivals from mainland, Macau, Taiwan to August 7*, MacauPostDaily (July 1, 2020), https://www.macaupostdaily.com/article8654.html ("foreign visitors have been barred from entering Macau since March 18, and the entry ban was extended to cover all foreign nationals – including foreign non-resident workers – the following day." ); *see* Ex. 23 (Serviços de Saúde do Governo da Região Administrativa Especial de Macau, Special Webpage Against

---

*law mean for travelers -- and Hong Kong's tourism recovery?*, CNN (July 8, 2020), https://www.cnn.com/travel/article/hong-kong-travel-national-security-law/index.html).

[14] As part of his investigation of travel options, Dr. Xu applied for permission to enter Hong Kong, but was rejected on July 7, 2020.

8

Epidemics, https://www.ssm.gov.mo/apps1/PreventCOVID-19/en.aspx#clg17048 (last visited July 20, 2020) ("All non-Macao residents are prohibited from entering Macao, except residents of mainland China, of Hong Kong and of Taiwan, as well as holders of non-resident worker's identification card.")).

In short, even if Dr. Xu and Mr. Men could reach a country permitting video testimony, both China and Macau would bar their return home.

## ARGUMENT

Under these extraordinary circumstances, trial should be kept open to such a time when the Drs. Xu and Men are able to travel to a country that permits video testimony.

Dr. Xu's testimony will be critical to this trial. This is an inventorship dispute under 35 U.S.C. § 256. As one of the two named inventors of the '551 patent and a counterclaimant to become a named inventor of the '321 patent, Dr. Xu is a central witness who participated directly in and has significant personal knowledge about the factual issues at the heart of the parties' disputes. As the First Circuit has recognized, a factfinder's opportunity to evaluate credibility based on live testimony can be crucial to a reliable resolution of this matter. *See, e.g., Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1356 (1st Cir. 1992) (noting that "the fact-finder's opportunity to evaluate [a central witness's] credibility on the basis of in-person testimony could be crucial to a reliable resolution of these factual disputes."). Further, as stated in the legal encyclopedia *Corpus Juris Secundum*:

> **The right to examine witnesses is an essential element in the conduct of a trial, and the purpose of all examinations is to elicit facts in order to present the truth.**
>
> The right to examine witnesses is an essential element in the conduct of a trial, and a refusal to hear a proper witness may constitute prejudicial error. The object of all examination of witnesses is to elicit facts in order to present the truth. The judge

9

> must see that necessary facts within the knowledge of a witness are
> elicited, from which the issues of a case may be accurately and
> fairly determined. **This is particularly true in bench trials.**

98 C.J.S. Witnesses § 437 (2020) (bold in original).

Astellas seems to agree that the credibility of Defendants' witnesses will be critical to this case. For example, in its Opposition to Defendants' Motion *In Limine* to Preclude Certain Evidence and Argument Relating to U.S. Patent No. 9,745,551, Astellas asserted that:

> Defendants' efforts to omit Drs. Kimbrel and Lanza as inventors on the '551 patent in the first place and their continued efforts to keep Drs. Kimbrel and Lanza off of the '551 patent are also relevant because they demonstrate the Defendants' [*e.g.* Dr. Xu] *lack of credibility* and repeated misrepresentations with respect to the patent and Astellas' contributions to it.

(ECF 198) at 7-8 (emphasis added). Dr. Xu will testify *inter alia* that he and Dr. Wang contributed significantly to the disputed patents, that Drs. Kimbrel nor Lanza had misrepresented the science and his contribution to it, and that Dr. Wang's recollection of events is correct. All of this evidence will turn, in part, on Dr. Xu's credibility. Dr. Men will likewise add to the determination of the defense and counterclaim, providing testimony regarding his own motivations as an investor that counters Astellas' damages case (which claims unjust enrichment based on investments in ImStem).

The current pandemic is affecting the ordinary schedule. Even if Drs. Xu and Men could get into Hong Kong – they cannot – they would not be allowed to return home. Dr. Xu would be forced to leave behind his wife, his dependent son, and his university position, without knowledge of when he may return home. Dr. Men would likewise be kept from his home and work. Both in the midst of a pandemic. This is an unreasonable burden, and is sufficient on its own to meet the requisite good cause to sustain this motion. *See generally Ne. Drilling, Inc. v. Inner Space Servs., Inc.*, 243 F.3d 25, 36 (1st Cir. 2001) (An "unreasoning and arbitrary

10

insistence upon expeditiousness in the face of a justifiable request for delay will abuse [the Court's discretion].")

The parties cannot avoid these problems by merely reverting to designating deposition testimony. Both Drs. Xu and Men have been deposed – both came to the United States voluntarily – but at the time of the depositions, and indeed until the onset of the COVID-19 pandemic, the Defendants expected both witnesses to be able to come to the United States for trial. *See, e.g.*, Ex. 24 (Xu Depo. Tr. at 226:7-12 (July 3, 2019)). The parties therefore never undertook "trial depositions." Drs. Xu and Men's side of the story was never fully or cogently presented.

One-sided interrogations by an adverse party (Astellas) are no substitute for trial testimony, are insufficient to give this Court the necessary information to make an accurate and informed decision on the merits of this case, and are contrary to the fairness in the administration of justice which the Federal Rules seek to promote. *Wezorek v. Allstate Ins. Co.*, No. CIV A 06-CV-1031, 2007 WL 1816293, at *5 (E.D. Pa. June 22, 2007) ("The Federal Rules essentially seek to ensure fundamental fairness in the administration of justice . . . . Without the statement, Wezorek and Barosh have the unfettered ability to present their one-sided version of events, subject to Allstate's cross-examination. This scenario, however, leaves Allstate without any substantive evidence of the interaction."). It is particularly problematic where, as is the case here, the Court's evaluation all of the witnesses' credibility is an important aspect of the case.[15] Trials pressed without key witnesses, who are willing to testify but temporarily prevented, have been vacated because such a trial "amounts to fundamental unfairness and misconduct sufficient to vacate the award." *Tempo Shain Corp. v. Bertek, Inc.*,

---

[15] Astellas has floated the idea of using affidavits. They, too, would not allow the Court to assess credibility.

11

120 F.3d 16, 21 (2d Cir. 1997); *see Cardell, Inc. v. Piscatelli,* 277 N.J. Super. 149, 155, 649 A.2d 107, 110 (App. Div. 1994) (finding that "[t]he court's refusal to permit defendant to call such witnesses denied him a full and fair trial.")

Drs. Xu and Men are willing to testify. They want to be heard.  Unforeseen global events, which threaten their personal health and welfare, prevent them telling their story.  This is more than sufficient reason to justify this Court holding open these proceedings until such a time that they are able to safely travel to give their testimony.

## **CONCLUSION**

In the spirit of keeping the case moving as much as possible, Defendants are *not* seeking to continue the remaining pretrial deadlines in the Court's Amended Scheduling Order and Pretrial Order (Dkt. 106), nor the Final Pretrial Conference (August 12, 2020 at 10:30 a.m.), nor the September 14 trial date, though such a position is reasonable in light of global events. Instead, the Defendants are seeking to keep trial open beyond September 25, 2020, to such a time when Defendants' key witnesses can travel to a location where they can provide testimony remotely.

| | |
|---|---|
| July 20, 2020 | Respectfully submitted,<br><br>IMSTEM BIOTECHNOLOGY, INC., REN-HE XU and XIAOFANG WANG,<br><br>By their Attorneys,<br><br>/s/ *Timothy Shannon*<br>Timothy R. Shannon, MA Bar # 655325<br>Martha C. Gaythwaite, MA Bar # 187650<br>VERRILL DANA LLP<br>One Portland Square<br>Portland, Maine 04101<br>(207) 774-4000<br>tshannon@verrill-law.com<br>mgaythwaite@verrill-law.com<br><br>Benjamin M. Stern, MA Bar # 646778<br>VERRILL DANA LLP<br>One Federal Street, 20th Floor<br>Boston, Massachusetts 02110<br>(617) 309-2600<br>bstern@verrill-law.com<br><br>*Attorneys for Defendants* |

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

I hereby certify that, on July 10 and 17, 2020, counsel for Defendants conferred by telephone with Counsel for Plaintiffs. Plaintiffs indicated they oppose the relief sought in the Motion.

| | |
|---|---|
| Dated: July 20, 2020 | /s/ *Timothy Shannon*<br>Timothy R. Shannon |

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2020, I caused a true copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF electronic filing system.


    Charles H. Sanders (BBO#646740) (via email; Charles.Sanders@lw.com)
    LATHAM & WATKINS LLP
    John Hancock Tower, 27th Floor
    200 Clarendon Street
    Boston, MA 02116
    Tel: (617) 948-6022

    Michael A. Morin (via email; Michael.Morin@lw.com)
    David P. Frazier (via email; David.Frazier@lw.com)
    Rebecca L. Rabenstein (via email; Rebecca.Rabenstein@lw.com)
    555 Eleventh Street, N.W., Ste. 1000
    Washington, DC 20004
    Tel: (202) 637-2200; Fax: (202) 637-2201

    /s/ *Timothy Shannon*
    Timothy R. Shannon