UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ASTELLAS INSTITUTE FOR REGENERATIVE
MEDICINE,

       Plaintiff,

v.

IMSTEM BIOTECHNOLOGY, INC., XIAOFANG
WANG, and REN-HE XU,

       Defendants.

C.A. NO. 1:17-cv-12239-ADB



**ASTELLAS' OPPOSITION TO DEFENDANTS' MOTION TO KEEP
TRIAL OPEN TO FACILITATE WITNESS TESTIMONY**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      Background ............................................................................................................... 2

II.     Argument ................................................................................................................. 5

      A.      Drs. Xu and Men Deferred to Dr. Wang on Central Issues in the Case and
             their Testimony is Largely Cumulative of Dr. Wang's ........................................... 7

      B.      Despite Drs. Xu and Men's Foreseeable Unavailability, Defendants Chose
             Not to Preserve Their Testimony ........................................................................ 10

      C.      Astellas Would Be Significantly Prejudiced by an Indefinite Continuance .......... 13

      D.      Astellas' Proposal Regarding Affidavits and Responses is a Reasonable,
             Viable Path Forward ......................................................................................... 14

III.    Conclusion ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amarin Plastics, Inc. v. Maryland Cup Corp.*,
 946 F.2d 147 (1st Cir. 1991) .................................................................................5, 12

*Bogosian v. Woloohojian Realty Corp.*,
 323 F.3d 55 (1st Cir. 2003) ......................................................................................5, 6

*Cardell, Inc. v. Piscatelli*,
 277 N.J. Super. 149, 649 A.2d 107 (App. Div. 1994) ..........................................8, 9

*Ji v. Jing Inc.*,
 799 F. App'x 88 (2nd Cir. Apr. 2, 2020) ......................................................................4

*Junjiang Ji v. Jling Inc.*,
 No. 15-CV-4194 (SIL), 2019 WL 1441130 (E.D.N.Y. Mar. 31, 2019) ....................4

*Mercier v. Sheraton International, Inc.*,
 981 F.2d 1345 (1st Cir. 1992) ......................................................................................7

*Ne. Drilling Inc. v. Inner Space Servs, Inc.*,
 243 F.3d 25 (1st Cir. 2001) ..........................................................................................5

*Tempo Shain Corp. v. Bertek, Inc.*,
 120 F.3d 16 (2d Cir. 1997) ..........................................................................................8

*Wezorek v. Allstate Insurance Co.*,
 No. CIV A 06-CV-1031, 2007 WL 1816293 (E.D. Pa. June 22, 2007) ....................8

Plaintiff Astellas Institute for Regenerative ("Astellas") submits this opposition to Defendants ImStem Biotechnology, Inc., Xiaofang Wang, and Ren-He Xu's ("ImStem" or "Defendants") motion to keep trial open to facilitate witness testimony.

Defendants have not and cannot meet the good cause standard for continuing trial under Local Rule 40.3, much less the indefinite extension that they seek.  Their one-sided motion completely ignores the prejudice to Astellas resulting from further indefinite trial delays.  While Defendants style their motion as one that just "holds trial open" so some witnesses can testify, Defendants' motion is nothing less than a request to hold trial open *indefinitely* until geopolitical tensions between the United States and China decrease to the point that Drs. Xu and Men feel comfortable that they will be able to return to Macau and China after traveling to testify.  This could be months, years, or forever.  The unprecedented scope of Defendants' request is evident in their silence on the key issue—*nowhere* do Defendants propose a date by which they expect Drs. Xu or Men can testify remotely.

Strangely, Defendants raise questions about the credibility of their own witnesses, arguing that they must be seen to be believed.  But the Court will have ample opportunity to see Drs. Xu and Men through the many hours of available video deposition testimony. And in any event, the interests of both ImStem and Dr. Xu are fully represented by Dr. Wang, who resides in the U.S. and is available to testify live (by video) at trial. Indeed, both Drs. Xu and Men deferred to Dr. Wang as most knowledgeable of many of the issues in the case. Defendants offer nothing but generalizations about the need for Drs. Men and Xu to testify beyond what they said during their depositions. To the extent they intend to change their testimony, the Court should not support such a strategy, and to the extent they wish to supplement it, they should have done so on redirect.

Defendants' apparent surprise in discovering that their witnesses may not appear by video

in a U.S. court proceeding from China or Macau itself is remarkable.  It is hard to imagine that they would not have researched the relevant law *before* the June 9 Status Conference where they agreed to the current trial schedule.  Be that as it may, the case law cited in Defendants' memorandum in no way supports the view that witnesses in a civil case who have already testified extensively by deposition must be given a chance to testify further live at trial.  This is particularly so where the witnesses' unavailability is announced only weeks before trial and there is no foreseeable time when the witness will be available.

Of course, Astellas and its counsel are mindful that we live in extraordinary times, and that all parties must do what they can to allow civil cases to move forward while protecting fundamental fairness.  While Defendants could have foreseen and avoided the current situation, in the spirit of compromise, Astellas proposes that the two witnesses in question submit their direct testimony in written form.   Astellas would be allowed to respond in writing and by citation to other documents or through testimony of other witnesses.  Astellas would waive its hearsay objection to the out of court statement by Defendants' witnesses. This procedure would allay any possible prejudice to Defendants while avoiding the untenable situation of an indefinite continuance of the close of trial.

The time for delay has passed.  Defendants' motion should be denied.

## I.    BACKGROUND

This is the second continuance that Defendants have sought for trial.  (Dkt. 187, 211.)  It is also the second time Defendants have agreed to a case schedule, then reversed course shortly thereafter to complain that the agreed-upon schedule is infeasible in light of events and circumstances that were foreseeable when they agreed to it. (*See* Dkt. 111 at 6 ("It is difficult to square Defendants' representations about discovery and the impossibility of an April 2020 trial with the proposed schedule Defendants agreed to just days in advance of filing their opposition brief that specifically acknowledged the pending Motion to Amend but omitted any mention of

how it would impact the proposed dates.").)  Such tactics should not be tolerated, especially when they are part of a pattern of strategic delay.

Defendants have been talking about witnesses testifying remotely from Macau at least as early as September 5, 2019.  After this Court ordered a second deposition of Dr. Xu in August 2019 (*see* Dkt. 85 at 9), Defendants proposed that this occur as a "video deposition" from "a location in Macau."  (*See* Ex. A[1].)  Even back then, Astellas expressed skepticism at such depositions and proposed that the deposition take place in California, which Defendants ultimately agreed to.  (*See* Ex. A at 2019.09.03 R. Rabenstein email to B. Stern (requesting dates for Dr. Xu's "deposition in California").)

Defendants have nonetheless continued to represent that there would be no issues with Drs. Xu and Men testifying remotely.  Defendants told the Court in June of this year that a bench trial "can be done in part by video.  And that would be a particularly helpful accommodation for our witnesses and our party in China.  I'm happy to explore their travel limitations with you;" "Our only request is that for the witnesses in China we have a day or two where we start on the earlier side because they are 12 hours offset;" "We've canvassed our witnesses and experts. Everyone is available . . . the three weeks of September 7, 14, and 21." (Ex. B at 4:24-5:3, 5:16-19; 6:18-23.) Notably, Defendants made these representations *after*:

(1)     the restrictions in Chinese and Macau law were enacted that "effectively prohibit video trial testimony in a foreign (*i.e.* U.S.) court" that have only now "come to the Defendants' attention" (Dkt. 212 at 3) and the U.S. State Department summary that Defendants rely on was made available on the State Department's website;

(2)     the publication of all the references Defendants rely on in arguing that permission for remote participation in proceedings is "technically possible" to obtain from the Chinese Central Authority, but in practice "is almost never given" (Dkt. 212 at 4 & n.7 (citing references published in 2009, 2011, 2017 (*i.e.,* Shannon Decl. Ex. 4), and 2018));

---

[1] All exhibits refer to the Declaration of Rebecca L. Rabenstein in Support of Astellas' Opposition to Defendants' Motion unless otherwise indicated.

(3)     the district court's decision in *Junjiang Ji v. Jling Inc.*, No. 15-CV-4194 (SIL), 2019 WL 1441130 (E.D.N.Y. Mar. 31, 2019) and the Second Circuit's order dismissing the appeal of that decision (*Ji v. Jing Inc.*, 799 F. App'x 88 (2nd Cir. Apr. 2, 2020)) that Defendants rely on to argue that Chinese law bars video testimony from China in U.S. court proceedings (*see* Dkt. 212 at 4-5); and

(4)     the current Macau Country Profile was submitted to the Hague Evidence Convention (Dkt. 213-8 at 1 ("PROFILE UPDATED ON (DATE): March 2017")) that Defendants rely on to argue that "foreign-court video trial testimony is not permitted" in Macau (Dkt. 212 at 5-6).

Given Defendants' representations to the Court in June that the witnesses in China would be able to testify remotely in September, Astellas sent a follow-up letter on June 25, 2020 seeking to coordinate logistics ahead of the Pretrial Conference.  (Ex. C.)  In this letter, Astellas asked Defendants to confirm the locations from which their witnesses would be testifying, including whether Drs. Xu and Men would be traveling to the U.S. to testify or, if they were going to testify remotely, "under what legal authority they may do so, including that of the country from which they will be testifying."  (*Id.*)  Astellas requested a response by July 10.

It now seems that Defendants did not bother to investigate whether Drs. Xu or Men could testify from the U.S. Consulate in Hong Kong or via video from Macau or China until receiving Astellas' letter.  (*See* Dkt. 213-17 (July 2, 2020 email from Verrill Dana attorneys to the U.S. Consulate in Hong Kong); Dkt. 213-21 (July 1, 2020 email from the U.S. Consulate in Hong Kong to Verrill Dana attorney T. Waller); Dkt. 213-11 (July 13, 2020 email from Dr. Xu to Macau law professor Dr. Li).)  Defendants should have, but apparently did not, confirm that video testimony of an individual located in Macau or China was legal before: 1) offering Dr. Xu's remote deposition in October 2019; 2) stating that Drs. Xu and Men intended to testify live or by video in March 2020 when acknowledging that these witnesses might potentially become unavailable (*see* Ex. D); and 3) telling the Court on June 9 that its witnesses would be available to testify by video

from China in September.  Defendants offer no excuse for failing to investigate the ability of their witnesses to testify before representing to the Court that they were ready and able to testify.

## II.     ARGUMENT

As described above and below, Defendants cannot meet the good cause standard of Local Rule 40.3 to continue trial for a second time.  When assessing whether to grant a continuance, courts in this circuit "may look at prior delays and their reasons, the hardship to the nonmovant, and the good faith of the movant."  *Amarin Plastics, Inc. v. Maryland Cup Corp.*, 946 F.2d 147, 151 (1st Cir. 1991).  Further, the "conduct of the moving party is a factor to be considered."  *Id.* "The district court is accorded broad discretion to grant or deny continuances, and only an 'unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay' will abuse it."  *Id.* (quoting *United States v. Torres*, 792 F.2d 436, 440 (1st Cir. 1986)).

Requests for indefinite continuances are strongly disfavored, and are rarely, if ever, granted.  *Ne. Drilling Inc. v. Inner Space Servs, Inc.*, 243 F.3d 25, 36 (1st Cir. 2001) (holding no abuse of discretion in denying a continuance where the defendant "requested that the trial date in th[e] case be postponed indefinitely"); *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 63-64 (1st Cir. 2003) (holding that denial of a "sick-leave-based continuance did not remotely constitute an 'unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay'" where postponement "almost surely would deteriorate into an indefinite one given" that the witness's deteriorating physical condition suggested she may not ever be able to testify).

*Bogosian* is particularly instructive.  In that case, the district court had already granted at least one motion to continue trial, the party seeking a continuance had only provided "counsel's word that she is not able to come to court" and had "not shown she is incapable of testifying," and had "made no contention on appeal (let alone any showing) that her deposition testimony was

inherently inferior, in any respect, to her anticipated live testimony." *Bogosian*, 323 F.3d at 63-64 (alterations omitted).

Similarly here, this Court has already granted Defendants' first motion to continue trial. (Dkt. 189.)  Defendants have not provided any evidence that Drs. Xu or Men are incapable of testifying or that they are prevented from doing so by pandemic restrictions.  Rather, Defendants' primary complaint is that if Drs. Xu and Men travel to testify, they might not be able to re-enter Macau or China afterward, given that they are U.S. citizens and the geopolitical tensions between China and the United States.  (Dkt. 212 at 8-9, 10-11.)

Nor have Defendants made any showing that Dr. Xu's testimony at two depositions, totaling nearly nine hours (*see* Exs. E & F), or Dr. Men's deposition testimony, totaling nearly five hours (*see* Ex. G), is "inherently inferior, in any respect, to [their] anticipated live testimony." *Bogosian*, 323 F.3d at 63-64.  The most Defendants say on this point is their unsupported, conclusory statement that "Drs. Xu and Men's side of the story was never fully or cogently presented." (Dkt. 212 at 11.)  Defendants point to no specific deposition testimony at all, let alone show how that testimony would be inferior to their anticipated live testimony.  And even if true, (1) Astellas has offered for them to submit their direct testimony by affidavit (as long as it has the ability to respond) and (2) it is a problem of Defendants' own making.

Separately, Defendants argue that the Court can only assess Drs. Xu and Men's credibility if they testify at trial via video.  (*See* Dkt. 212 at 11-12.)  Not so.  The Court is fully capable of assessing Defendants' credibility based on the videotaped depositions of Drs. Xu and Men (after all, *none* of the witnesses will be in person anyway), sworn statements of Dr. Xu (such as the affidavit Dr. Xu submitted to the U.S. Patent and Trademark Office in 2017), and contemporaneous documentary evidence authored or received by Drs. Xu and Men, such as the

exhibits discussed at their depositions.

    **A.**    **Drs. Xu and Men Deferred to Dr. Wang on Central Issues in the Case and their Testimony is Largely Cumulative of Dr. Wang's**

At its core, Defendants' complaint of unfairness rests on their assertion that Drs. Xu and Men's credibility[2] can only be assessed through video testimony and that, without video testimony, they will be unable to tell their story or counter Astellas' story.  (Dkt. 212 at 11-12.)  Of course, one usually associates the need to assess credibility of live testimony with opposing witnesses rather than the party's own.  Regardless, Defendants can present their affirmative story at trial.

Contrary to Defendants' implication, Drs. Xu and Men are not important witnesses for them.  Both repeatedly either denied knowledge of key issues in the case or deferred to Dr. Wang. For example, Dr. Men testified that whether Drs. Xu and Wang had received a protocol on how to make MSCs from embryonic stem cells from ACT ███████████████████ (Ex. G at 79:14-80:1), that he ████████████████████ (*id.* at 89:4-14), and that ████████ ████████████████████████ (*id.*).  Dr. Xu testified that Dr. Wang should be asked:

    █ ████████████████████████████████
    ██████████████████
    ███████████████████████████

(Ex. E at 143:23-144:2 (objection omitted); *see also id.* at 66:22-67:6 (despite overseeing Dr. Wang, testifying that "██████████████████ when asked whether he knew Dr. Wang

---

[2] *Mercier v. Sheraton International, Inc.*, which Defendants cite for the proposition that "credibility based on live testimony can be crucial to a reliable resolution of this matter," is irrelevant.  (Dkt. 212 at 9 (citing 981 F.2d 1345, 1356 (1st Cir. 1992)).)  The *Mercier* court held the district court did not abuse its discretion when it dismissed a complaint on the grounds of *forum non conveniens* where, in part, one key witness was in Turkey and the defendants demonstrated that Turkey was an adequate alternative forum.  981 F.2d at 1347, 1356, 1358.  Here, even if an analogy to a *forum non conveniens* analysis were appropriate (it is not), Defendants are not alleging an adequate alternative is available.

would receive cells and protocols from Astellas), 68:17-69:2 (agreeing that he understood Astellas' cells and protocols shouldn't be disclosed and testifying ███████████████ ███████████████████████████████████████████.)  Indeed, Dr. Men testified that he did not and still does not know whether there was ███████████████████ ███████████████████.'"  (Ex. G at 78:16-25.)  And Dr. Xu repeatedly testified that he either did not understand or had not read many key emails and documents regarding Astellas and the collaboration or the '551 patent applications that Dr. Wang sent him.  (*See, e.g.,* Ex. E at 94:23-95:21 ("██████████████████████████████████████████████████████ ██████████████████████████████████████████████); 123:16-125:8 █ ███████████████████████████████████████████████), 157:22-158:9 ████████████████████████████████████████████████████ 158:20-159:6 ██████████████      ████████████████████████████████████ (regarding the patent application Drs. Wang and Xu filed in 2012 stating ██████████ ████████████████████████████████████████████████████████ ████████████████████████████████████); 212:3-7 (regarding the declaration Drs. Wang and Xu submitted to the U.S. Patent Office in January 2017 stating ██████ ██████████████████████████████).)



    Defendants omit that Dr. Wang—their main fact witness—resides in the U.S. and will testify live (on video) at trial.  Dr. Wang is fully able to present Defendants' affirmative story and version of events.  This fact alone distinguishes the situation before the Court with those in *Wezorek v. Allstate Insurance Co.* and *Tempo Shain Corp. v. Bertek, Inc.*[3]  (Dkt. 212 at 11 (citing

---

[3] Defendants also cite a New Jersey state court case, *Cardell, Inc. v. Piscatelli*, 277 N.J. Super. 149, 649 A.2d 107 (App. Div. 1994), which is even farther afield.  There, the trial court ordered a Special Master to take testimony from only one witness of each party and then provide his report and recommendation based on that testimony.  *Id.* at 153.  The appellate court held that the trial court had no authority to limit testimony to only one witness from each party and that such

No. CIV A 06-CV-1031, 2007 WL 1816293, at *5 (E.D. Pa. June 22, 2007) and 120 F.3d 16, 22 (2d Cir. 1997)).)

The *Wezorek* court held that an audio recording of a prior, out of court statement by an unavailable witness to a claims adjuster was admissible under the residual hearsay exception in Federal Rule of Evidence 807, in part, because admitting the audio recording accomplished the general goal of fundamental fairness in the administration of justice where that recording was the *only* evidence available to rebut one side's version of the interaction underlying the dispute. *Wezorek*, 2007 WL 18162963 at *4-5. Similarly, the *Tempo Shain* decision turned on the fact that the unavailable witness was "the only person who could have" rebutted the other side's representations allegedly made during negotiations underlying the dispute where those representations were undocumented and the unavailable witness's testimony would not have been cumulative of any other available testimony. *Tempo Shain*, 120 F.3d at 20.

The opposite is true here. Defendants' main witness is here in the United States and available to testify live. Dr. Wang is the key witness for Defendants. As explained above, both Drs. Xu and Men deferred to him on important, relevant events, with Dr. Xu going so far as to sign the declaration that Defendants submitted to the U.S. Patent & Trademark Office in January 2017 without reading it first because he "█████████████████████████████████." (Ex. E at 212:3-7.) Dr. Men, the Chief Executive Officer of ImStem, similarly followed Dr. Wang's lead, testifying that he personally is "████████████████████████████████████ ████████████████████████████████████████████████████████████████████████"

---

limitation denied the parties a full and fair trial. *Id.* at 154-55. That is miles away from the facts here, where Drs. Xu and Men's deposition testimony, Dr. Wang's deposition and trial testimony, and Defendants' experts' trial testimony is expected to be admitted at trial.

(Ex. G at 18:12-19:8.)  And that the person Dr. Men ███████████████████████
████████████████ (*Id.* at 18:12-19:8.)

Even ignoring that Dr. Wang, who will testify at trial, is Defendants' witness with the most percipient knowledge of the issues for trial, there are literally days' worth of videotaped testimony on file for the two witnesses who are the subject of Defendants' motion,[4] not to mention a rich documentary record which Astellas will prove is dispositive to most of the issues in the case. Further, Defendants' motion indicates that Drs. Xu and Men's testimony will be largely cumulative of this other evidence, albeit more "fully or cogently presented."  (Dkt. 212 at 10, 11.)  And as explained further below, Astellas' offer to allow affidavits from Drs. Xu and Men remains open and provides yet another avenue for Defendants to tell their story.

### B.    Despite Drs. Xu and Men's Foreseeable Unavailability, Defendants Chose Not to Preserve Their Testimony

Defendants have been talking about video testimony at trial for months (*see* Ex. A), but apparently never took steps to confirm that such testimony would be legal.  Defendants also failed to confirm that such testimony would be legal in February and March of this year, despite recognizing that the changing world events might affect Drs. Xu or Men's availability or

---

[4] While Defendants complain that Drs. Xu and Men's deposition testimony doesn't cogently present their proposed trial testimony (Dkt. 212 at 11), the fact that Astellas has consented to a bench trial mitigates this complaint.  This Court is fully capable of synthesizing relevant excerpted testimony, and it will have the aid of both sides' pretrial proposed findings of fact and post-trial briefing to do so.  Moreover, Dr. Xu was asked a variety of open questions at his depositions to which he either gave extensive answers and explanations or deferred to Dr. Wang. (*See, e.g.*, Ex. E at 149:13-150:13 (providing nearly a page of testimony in response to the question "███████████ ██████████████████████████████████████████), 72:21-73:6 (answering "██████████████, 120:21-121:1 (deferring to Dr. Wang when asked ████████████████████████████████████ ███████████), 121:19-122:3 (deferring to Dr. Wang when asked ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████)

willingness to risk not being able to reenter Macau or China after testifying.  (*See* Ex. D.)

Now, barely two months before an agreed upon trial date, Defendants purport to have just learned that witnesses in Macau and China cannot testify remotely.  And while COVID-19 might complicate the ability to travel to a different country to testify, the real reason is that global tensions between the U.S. and China threaten the status of Drs. Men and Xu, both U.S. citizens living on visas in Macau and China, to leave and return to those countries (Dkt. 212 at 8-9).  While these specific details may not have been foreseeable,[5] the potential for two witnesses living in a foreign country on the other side of the globe to have difficulty attending trial is ***completely foreseeable***.  Indeed, part of the reason parties take depositions is to preserve evidence to be presented at trial.  Witnesses become unavailable.  Priorities change.  Health fails.  Logistics become insurmountable.  Witness unavailability can occur in any litigation, and does not warrant an indefinite stay in the hopes that world politics will improve.  Defendants could have preserved the testimony of Drs. Xu and Men, but chose not to.  That is on them, not Astellas or the Court.[6]

Drs. Xu and Men's potential unavailability, given that they reside on the other side of the globe and had difficulty scheduling their depositions in the U.S. in the first instance, was foreseeable.  Defendants had every opportunity to preserve Drs. Xu and Men's testimony.  Dr. Xu was first deposed on July 3, 2019 after lengthy negotiations about his availability.  (*See* Exs. H and I at May 30, 2019 T. Shannon email (offering Drs. Men and Xu for deposition in Los Angeles

---

[5] Astellas notes that Defendants rely on a March 26, 2020 press release from the People's Republic of China announcing China's decision "to temporarily suspend the entry into China by foreign nationals holding visas or residence permits still valid to the time of this announcement," as evidence of "unforeseen global events."  (*See* Dkt. 212 at 8, 12.)  This press release was issued months before Defendants represented to the Court that Drs. Xu and Men were ready and able to testify from Macau and China.  Defendants thus could and should have known about this ***actual*** risk before they agreed to a September trial.

[6] Notably, Defendants' motion is silent on the number of times that Drs. Xu and Men have been in the United States since 2017, aside from the trips made for their depositions in this case.

on June 26 and 28), June 3, 2019 L. Sharkey email (asking for July 2 for Dr. Xu, after his scientific conference), June 5, 2019 T. Shannon email ("[f]or cost reasons, we're trying to keep them somewhat together so I only have to make one trip out to L.A.  The 12-hour time shift with Macau/Shanghai isn't helping our scheduling efforts"), June 7, 2019 T. Shannon email ("As to Xu and Men, the schedule is a little tricky.  Dr. Xu is flying with his wife and children on the 26th, so having him come early is impossible" and offering Dr. Xu as "available July 1 – 3 in San Diego. Mr. Men is available July 2-3 in L.A."), June 19, 2019 T. Shannon email ("We can present Dr. Xu in San Diego on July 2; I'm working with Mr. Men to see if he can come down to San Diego"); June 29, 2019 T. Shannon email ("For a variety of scheduling reasons we would like to swap the order of Drs. Men and Xu (*i.e.,* Men on July 2, Xu on July 3).")  Dr. Men was deposed around the same time, again after much back and forth between counsel about how burdensome his appearance would be given his role as Chief Executive Officer.  (*See id.*)  After Dr. Xu's first deposition, Defendants decided to amend their pleadings and Astellas again requested his deposition with respect to the new subject matter.  Dr. Xu again came to the U.S., and again Defendants' counsel could have simply asked him questions on the record in whatever form they wished to preserve his story or have it presented in a more cogent way.  They chose not to.

Defendants' strategic choice not to preserve Drs. Xu and Men's testimony, despite their foreseeable unavailability, is not a basis to continue trial for a second time.  Moreover, Defendants' conduct weighs against a continuance here, given that they had multiple opportunities to avoid the problem they now assert warrants a continuance, but chose not to take them.  *See Amarin Plastics,* 946 F.2d at 151  (explaining that the "conduct of the moving party is a factor to be considered" in assessing a motion for a continuance).  And again, Defendants offer ***no excuse*** for failing to recognize that their witnesses would be allegedly unavailable ***before*** this Court set the current trial

date.

### C.     Astellas Would Be Significantly Prejudiced by an Indefinite Continuance

Defendants' motion is completely silent on a key consideration—that further delay would significantly prejudice Astellas.  Astellas filed suit in November 2017.  At every step, Defendants have sought to complicate, frustrate, and delay resolution of this matter on its merits.  (*See, e.g.,* Dkt. 75 at 16 (explaining that Defendants hid behind the fact that Dr. Xu resides in Macau when stalling Dr. Xu's first deposition for five months, despite Astellas' repeated attempts and requests to schedule it); *id.* at 17 (explaining that Defendants failed to serve ***any*** of their responses to Astellas' discovery requests by their original due dates and completely failed to request an extension for one response until two weeks after the due date, despite Astellas' attempts to get Defendants to comply with their obligations); Dkt. 117 (Defendants' counsel's motion to withdraw as counsel, filed less than a week before the first expert deposition, offering to take and defend expert depositions only "if necessary"); Dkt. 118 at 3 (Astellas' opposition to the motion to withdraw,[7] explaining how "Defendants' improper delays have impeded this case from being decided on its merits").)

Defendants have already sought and obtained one continuance.  Now they seek to further delay the day of reckoning for their bad acts.  As the contemporary documentary evidence makes clear, Defendants schemed from the outset to steal Astellas' valuable HB-MSC technology and exploit it themselves by claiming it in patent applications, using it to seek grant money and investors for ImStem, and using it as "short cut" for their MSC work.  Dr. Wang explicitly told

---

[7] While this Court denied Defendants' counsel's motion to withdraw, it did so with leave to renew after the completion of expert discovery, just two weeks later.  (Dkt. 119.)  Oddly, Defendants' counsel never sought leave to renew, nor offered any explanation as to how circumstances—so dire as to warrant a motion to withdraw without replacement counsel in place just weeks prior— had changed.

Drs. Xu and Men at the time they filed the first provisional application that led to U.S. Patent No. 9,745,551 ("the '551 patent") that the purpose of that application was ███████████ ███████████████████████████████████████████" (Ex. J at IMSTEM-0031515 (emphasis added)) and that it was ImStem's "████████" (Ex. K at IMSTEM-0027835).  Dr. Wang additionally told Dr. Xu that the application could be used to ██████████████ ████████████████████████" (Ex. L at IMSTEM-0009108.)  Defendants further hid that Astellas scientists developed the HB-MSC technology claimed in the '551 patent from both the University of Connecticut (*Id.* at IMSTEM-0009118 (answering "███████" in response to the instruction to "███████████████████████████████████████████████ ██████████████████████████████████████████████)) and the U.S. Patent and Trademark Office (Ex. M at 12 (swearing to "have possession" of the claimed invention prior to earliest filing date of Astellas' patents but omitting that this was because Astellas had provided them that information as part of the collaboration even earlier)).

Astellas should have its day in court.  Further delay, in light of all the other Defendant-driven delays, will significantly and unfairly prejudice Astellas. This unfair prejudice to Astellas alone—and Defendants' failure to address it—warrants denial of Defendants' motion.

### D. Astellas' Proposal Regarding Affidavits and Responses is a Reasonable, Viable Path Forward

As discussed above, Defendants will suffer no unfair prejudice by holding firm to the September trial schedule.  But in the spirit of cooperation, Astellas will agree that Drs. Xu and Men may provide their direct testimony by affidavit, provided that Astellas is able to address it, for example, using existing deposition testimony, rebuttal testimony from additional witnesses, and/or via a written statement directing the Court's attention to rebuttal documents or exhibits.

## III.   CONCLUSION

For the above reasons, Astellas respectfully requests that the Court deny Defendants' motion for an indefinite continuance of trial and hold trial as currently scheduled.

Dated: July 28, 2020

Respectfully submitted,

/s/ *David P. Frazier*
Charles H. Sanders (BBO# 646740)
LATHAM & WATKINS LLP
John Hancock Tower, 27th Floor
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6022
Facsimile: (617) 948-6001
charles.sanders@lw.com

Michael A. Morin (*pro hac vice*)
David P. Frazier (*pro hac vice*)
Rebecca L. Rabenstein (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
michael.morin@lw.com
david.frazier@lw.com
rebecca.rabenstein@lw.com

Lauren K. Sharkey (*pro hac vice*)
Brenda L. Danek (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
lauren.sharkey@lw.com
brenda.danek@lw.com

Yi Sun (*pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
yi.sun@lw.com

*Counsel for Astellas Institute for Regenerative Medicine*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent on July 28, 2020 to those identified as non-registered participants.

/s/ *David P. Frazier*
David P. Frazier