1                 UNITED STATES DISTRICT COURT

2                  DISTRICT OF MASSACHUSETTS

3     _____

4     ASTELLAS INSTITUTE FOR
      REGENERATIVE MEDICINE,

5
                          Plaintiff,        Civil Action
6                                           No. 17-CV-12239-ADB
      v.
7                                           August 26, 2020
      IMSTEM BIOTECHNOLOGY, INC.,
8     et al.

9                         Defendants.       Pages 1 to 16

10    _____

11

12         TRANSCRIPT OF HEARING VIA ZOOM VIDEOCONFERENCE
             BEFORE THE HONORABLE ALLISON D. BURROUGHS
13                 UNITED STATES DISTRICT COURT

14

15

16

17

18

19

20

21

22                   JOAN M. DALY, RMR, CRR
                     Official Court Reporter
23               John J. Moakley U.S. Courthouse
                 One Courthouse Way, Room 5507
24                     Boston, MA  02210
                     joanmdaly62@gmail.com
25

1   APPEARANCES:

2

FOR THE PLAINTIFF:

3

4           **DAVID P. FRAZIER, ESQUIRE**
            **MICHAEL A. MORIN, ESQUIRE**
5           **REBECCA L. RABENSTEIN, ESQURIE**
            Latham & Watkins LLP (DC)
6           555 11th Street, N.W.
            Suite 1000
7           Washington, DC 20004-1304
            202-637-2259
8           david.frazier@lw.com
            michael.morin@lw.com
9           rebecca.rabenstein@lw.com

10          **YI SUN, ESQUIRE**
            Latham & Watkins LLP
11          12670 High Bluff Drive
            San Diego, CA 92130
12          (858) 523-5415
            yi.sun@lw.com

13

14

FOR THE DEFENDANTS:

15

16          **MARTHA C. GAYTHWAITE, ESQUIRE**
            **TIMOTHY R. SHANNON, ESQUIRE**
            Verrill Dana, LLP
17          One Portland Square
            P.O. Box 586
18          Portland, ME 04112-0586
            207-774-4000
19          mgaythwaite@verrilldana.com
            tshannon@verrilldana.com

20

21          **BENJAMIN M. STERN, ESQUIRE**
            **TRAVIS K. WALLER, ESQUIRE**
22          Verrill Dana, LLP
            One Federal Street, 20th Flr.
23          Boston, MA 02110
            617-309-2600
24          bstern@verrill-law.com
            twaller@verrill-law.com

25

1           P R O C E E D I N G S

2                (The following proceedings were held via Zoom

3       videoconference before the Honorable Allison D. Burroughs,

4       United States District Judge, United States District Court,

5       District of Massachusetts, on August 26, 2020.)

6                THE CLERK:  This is civil action 17-12239, Astellas

7       versus ImStem Biotechnology.  Will counsel identify

8       yourselves for the record.

9                MR. FRAZIER:  Good morning.  This is David Frazier

10      for Astellas.  I'm joined today by Michael Morin and Reba

11      Rabenstein also from Latham & Watkins.  We have on the phone

12      in-house counsel from Astellas Dr. Andrea Tiglio and Dr. Yuko

13      Soneoka Gee.

14               MR. SHANNON:  Good morning, Your Honor.  Timothy

15      Shannon on behalf of the defendants.  I'm joined this morning

16      by Martha Gaythwaite, Ben Stern, and our colleague Travis

17      Waller is observing.

18               THE COURT:  All right.  The first papers on

19      preemption have been filed.  Mr. Shannon, we also did some

20      quick research on our own, and we'll obviously wait for your

21      response, but it looks like preemption is an affirmative

22      defense that should have been pled.  Assuming that turns out

23      to be the case, we're not going to let you plead that now.

24      It's just too late.

25               MR. SHANNON:  Your Honor, just a word about the

1    process here.  We've already withdrawn that defense.  We

2    submitted a letter to the Court on Monday identifying that we

3    had withdrawn the defense.

4              THE COURT:  I looked at the docket last night, and

5    it's not on there.  Karen?

6              THE CLERK:  I don't know.  I'd have to take a look,

7    too.

8              MR. SHANNON:  Your Honor, just so you're aware, we

9    had a meet and confer, and we told Astellas that we were

10   withdrawing the defense.  There was apparently some sort of

11   crossing of wires and the paper got filed anyway.  As we

12   indicated in our letter, we're withdrawing it.  We won't be

13   filing anything on Friday.  It's moot.  And we suggest that

14   the parties enter a stipulation.  Just as Astellas is pulling

15   back its breach of contract claim and its trade secret

16   misappropriations claim, we're pulling back that particular

17   defense, and we can just memorialize it for the Court.

18             THE COURT:  Check the docket for me because I don't

19   think that letter got filed.  Just so we have a complete

20   record.  And the other thing, Mr. Frazier, I did tell

21   Mr. Shannon the last time that he could check with his

22   client, and I left open the possibility of moving the trial

23   date depending on what they wanted to do.  But Mr. Shannon,

24   what is it that you think is going to change between

25   September and November?

1          MR. SHANNON:  Thank you, Your Honor.  There's been
2     a couple of developments that we want to keep you apprised
3     of.  First, the defendants have retained an additional set of
4     Macao counsel.  They had previously consulted with the law
5     faculty at the university who did not give any of us much
6     hope as to the availability of remote video testimony.  So
7     the client went back after our hearing before the Court and
8     the Court's determination that the trial would not be kept
9     open.  They went back and retained additional counsel who has
10    presented a glimmer of hope that it may be possible to make
11    Dr. Xu available by video.

12          We are still investigating.  The communications are
13    on going, and the research is still developing.  But there is
14    a glimmer of hope that he'll be able to participate by video.

15          Additionally, the latest news from Macao in Hong
16    Kong, and this is not certain, again we're dealing with
17    uncertain information that's been translated across countries
18    and languages, but it's that the border between Macao and
19    Hong Kong is set to open at the end of September.  It's not
20    entirely clear who will be permitted to travel across that
21    border, but there is apparently considerable economic
22    pressure to open that border.

23          Between these two things, that is, either the
24    development of an alternative route for video testimony
25    through the construct and advice of this new counsel, or

1    through the opening of the border and Dr. Xu being able to

2    participate from Hong Kong, we're hopeful, hopeful that

3    Dr. Xu will be able to participate by video.

4            THE COURT:  This is my thinking on the matter.  I

5    will hear from you, Mr. Frazier, after I toss this out there.

6    I am amenable to moving the trial to November.  Not to

7    Thanksgiving week or the week right after Thanksgiving

8    because I think that's just a lot to ask of everybody given

9    the current situation.  But I could -- Karen, tell me if I'm

10   wrong, but I think I could move it to November 2.  And that

11   will give us the week of the 2nd and the week of the 9th with

12   a little spillover into the 16th if we have technological

13   issues.  It accounts for Veteran's Day if we decide to take

14   that day off.

15           That's my proposal.  It would be a date certain.

16   And whether or not Dr. Xu is available on that date or not.

17   But I am willing to move it to that week.  Mr. Frazier,

18   what's your world view?

19           MR. FRAZIER:  Well, Your Honor, obviously we have

20   devoted already a lot of time and resources for preparing for

21   the September date.  There was a representation by the

22   defendants that they would be ready to go in September when

23   we had the status conference back in June.  Our view is we're

24   trying to be very flexible.  We switched to a bench trial

25   instead of a jury trial so that we could get to the trial

1    quickly and so forth, and now it turns out that they're not

2    really ready.  And now we have November.  But I guess for

3    clarity, it would certainly be helpful if the Court is

4    inclined to go with a November date, that this really be the

5    final, final date.

6         The amount of resources that go into getting ready

7    and then stopping and then getting ready again is really

8    tremendous, and it's not something that we want to put our

9    witnesses or the client through again.

10        THE COURT:  Most people can find something to do

11   with an extra month of preparation just before trial.  And

12   it's only a month.  So it's not like you're going to have to

13   be redoing things that you've already done.  It's not six

14   months.

15        And then I just spent four hours yesterday

16   listening in on a school committee call in Newton.  I'm

17   worried about September just being a mess for everybody.

18   We're supposed to resume criminal jury trials on

19   September 28.  I have one in the first batch that may or may

20   not go those first two weeks if they go at all.

21        I'm worried about September.  And I'm also very

22   disinclined to put this near Thanksgiving in part because

23   those people that have college kids and stuff like that that

24   they're going to be coming back home.  I'm trying to slot

25   this into a time that kind of makes sense for what I think

1    people's personal lives are going to look like and give

2    Dr. Xu some opportunity to participate in this.  I take your

3    point about how they had months to sort this out.  I think to

4    say in the course of a pandemic that if anybody has had

5    months to do anything is not really -- it doesn't really

6    reflect reality.  We're all trying to adjust what we're doing

7    a week or even a day at a time.

8         To give Dr. Xu a chance and just for letting things

9    settle down a little bit after September, I'm just thinking

10   that November might be a better time to do this for all of

11   us.  It is going to be a date certain, and it will be -- as I

12   said we've allocated two weeks.  I've always tried to keep a

13   three-week block clear in case there's technological issues,

14   etc.

15        This has Veteran's Day thrown in there.  If we

16   spill over a little bit -- Karen, I'm right, right, those are

17   the three weeks that I have open?

18        THE CLERK:  Yes.

19        THE COURT:  That's what I'm thinking.  November 2

20   and 9, and we'll have those couple of days at the beginning

21   of the week of the 16th if we end up needing them.

22        MR. SHANNON:  Your Honor, Tim Shannon.  Can I just

23   say a word?

24        THE COURT:  Mr. Shannon, you should be declaring

25   victory and going home.  But yes, of course you can.

1    MR. SHANNON:  Your Honor, yes.  Yes.  Thank you.  I
2    was going to do it hopefully in a smoother and subtler manner
3    than that, but yes.  We actually anticipated the possibility
4    of pre Thanksgiving.  And had Your Honor not suggested it, we
5    would have.  Pre Thanksgiving is fine.  It gives us a nice
6    deadline, so it encourages all of the staffings back up so we
7    can go and enjoy Thanksgiving.  We think that the legal
8    research and the border openings will have resolved
9    themselves one way or another by then.

10    THE COURT:  Don't think of this as Thanksgiving
11    being your hard stop.  You should really thinking about
12    Friday the 13th being your hard stop, but I'm recognizing
13    there's Veteran's Day, and there might be some technological
14    issues.  Do not think that we're doing this up until
15    Thanksgiving.

16    MR. SHANNON:  Understood, Your Honor.  We're all
17    looking forward to a brisk and efficient trial for sure.

18    THE COURT:  All right.  November 2.  Do you guys
19    want another final pretrial before then, or do you just want
20    to convene on the 2nd and get going?

21    MR. SHANNON:  Your Honor, could I flag two issues
22    that may help answer that question?

23    THE COURT:  Sure.

24    MR. SHANNON:  First, they both concern exhibits.
25    One is a party access question.  The other is a Court access

1    question.  With respect to party access, the existing

2    protective order, of course, is winding down.  And with it we

3    have the question of who can see what.  We think it's very

4    important for all of us, our clients, to be able to see and

5    to hear about the exhibits that have been presented by

6    Astellas.

7         To date we've been hampered by Astellas'

8    confidentiality designations, calling them highly

9    confidential, and preventing us from either showing or

10   discussing many of the critical documents with our own

11   clients.  That's been a hindrance so far.  We haven't

12   presented it to the Court because we've tried to actually,

13   believe it or not, reserve only the most critical fights to

14   the Court's attention.  But it is becoming critical.

15        In the lead up to trial we absolutely need to be

16   able to discuss with our clients the evidence that's going to

17   be presented.  And we think that requires us to be able to

18   share, subject to of course the broader protections of the

19   protective order, use only at trial, etc.  And we presented

20   that issue to Astellas.  I know that they're still thinking

21   about it, but I just want to flag it.  Perhaps they can

22   address that.  That's issue number one.

23        Issue number two, which again we don't need to

24   resolve this morning but I want to flag for the Court, is

25   there's still a little bit of mechanical question about

1    handling documents in a Zoom trial.  Without dragging the

2    Court into all the technological questions, we think perhaps

3    the threshold question, the biggest one is who wants paper.

4         Pushing around electronic copies is relatively easy

5    and there are a number of options, either the chat room,

6    email or thumb drive.  Lot of options there.  I think we can

7    work that out with the Court very easily.  A bigger

8    philosophical question, Your Honor, is whether you or whether

9    the Clerk also wants them.  Again, it's nothing we need to

10   necessarily resolve today.  But if it's going to require

11   haggling, we might need another conference.

12        THE COURT:  I would like paper to the extent

13   possible because I like to make notes on the paper.  But if

14   there's some that don't end up in paper, I can deal with

15   that.  Emily, are you there?  I'm assuming Emily does not

16   want paper.  Do you want paper, Emily?

17        LAW CLERK:  Yes, please.

18        THE COURT:  Emily would like paper, my law clerk.

19   We'd like two sets of paper.  Karen, do you care?

20        THE CLERK:  I don't care.  But Joan I think might

21   want paper, too.

22        THE COURT:  Joan, do you want paper?

23        THE COURT REPORTER:  No.

24        THE COURT:  We would like two sets of paper.  I'm

25   not expecting a Fedex package every night.  So if you have an

1   exhibit that you move in and move out, don't worry about.

2   Especially the important exhibits and any PowerPoints I like

3   to make notes on as we go.

4           MR. SHANNON:  Okay.  I think the parties can

5   probably work out some protocol for getting the paper in

6   advance of the trial.  It may be, Your Honor, for example we

7   send you some large universe that includes the likely

8   exhibits, and then you can sort of -- we can all sort of draw

9   from them as the trial goes instead of having daily Fedex

10  packages, I think the parties can probably work that out.

11          THE COURT:  I did an eight-hour *Markman* hearing

12  last week, and they each Fedex'd me -- they each Fedex'd me a

13  binder, and it worked great.

14          MR. SHANNON:  I'm confident we can hammer that out

15  with counsel from Astellas.  That just leaves the exhibit

16  access question, Your Honor.  I'm happy to address it now.

17  I'm not sure how you want to engage that question.

18          THE COURT:  I don't know what Mr. Frazier's

19  position on it is, but the documents that are presented

20  during the trial will be public, generally speaking.  And

21  that means that they will see them during trial.  If I need

22  to take a recess every five minutes because his clients

23  haven't seen an exhibit and need to, I'm going to be annoyed.

24  Mr. Frazier, what's your view?

25          MR. FRAZIER:  Your Honor, we have been working

1   under the presumption that all things presented at trial will

2   be public.  And we actually reached an agreement with

3   Mr. Shannon months ago that would allow his clients to see

4   the vast majority of the exhibits.  And this was brought up

5   in a meet and confer late last week, and we were preparing a

6   response to them.  I'm confident we can work this out.

7         The only sensitivity here, of course, is whether

8   his clients need to pour over in their capacity as fact

9   witnesses documents that they haven't seen over the last 10

10  to 12 years so that they can further adjust their story and

11  so forth, but we can deal with that if it appears to be an

12  issue at trial.  I'm really not trying to keep them from

13  having access to anything.  I thought we had largely resolved

14  the issue.

15        THE COURT:  How many hours did we agree for each

16  side at the end?  What did we agree to last time?

17        MR. SHANNON:  25, Your Honor.

18        THE COURT:  If we need to take time out for a

19  witness to look at an exhibit that's been held back, that's

20  going to be charged against the party that held back the

21  exhibit.

22        MR. SHANNON:  That's fine, Your Honor.  Thank you.

23        THE COURT:  So that means if somebody has a

24  strategic reason for having some document that they don't

25  want the person to see because it's a cross-examination

1    document or whatever, that's fine.  But pick your spots

2    because it's going to count against you.

3                MR. FRAZIER:  Understood, Your Honor.

4                MR. SHANNON:  Understood.

5                THE COURT:  All right.  I am going to presume that

6    we don't need another final pretrial.  But if anybody decides

7    they want one, let us know and we'll schedule it.

8                MR. SHANNON:  That's all we have from our end, Your

9    Honor.  Your Honor, could I ask a question?  From your

10   perspective, we're testing out this room and this audio.  Is

11   this audio and this visual acceptable, or do you need louder

12   or quieter?

13               THE COURT:  It's fine.  I'm telling you, I'm

14   sitting here in hurricane winds.  So if I can hear you today,

15   I'm going to be able to hear you under more ideal

16   circumstances.

17               MR. SHANNON:  Thank you, Your Honor.

18               THE COURT:  All right.  Mr. Frazier, anything from

19   you.

20               MR. FRAZIER:  Nothing from our side, Your Honor.

21   Thank you.

22               THE COURT:  Case is recessed.  As much as I like

23   you all, I would love to have a break from the constant

24   deluge of letters and we'll see you on November 2.  If you

25   need anything, we're here.

1          MR. FRAZIER:  Thank you, Your Honor.

2          (Court recessed at 11:20 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                      - - - - - - - - - - -

2                         CERTIFICATION

3

4          I certify that the foregoing is a correct

5   transcript of the record of proceedings in the above-entitled

6   matter to the best of my skill and ability.

7

8

9

10   /s/ Joan M. Daly                    October 5, 2020

11

12   _____        _____

13   Joan M. Daly, RMR, CRR             Date
     Official Court Reporter
14

15

16

17

18

19

20

21

22

23

24

25
```